VICKERS *v.* STATE.

RICH *v.* SAME.

(*Nashville,* December Term, 1939.)

Opinion filed June 29, 1940.

Petition to rehear denied December 14, 1940.

MADDOX, MADDOX & MADDOX, W. H. LASSITER, R. M. MURRAY, and G. C. CRIDER, all of Huntingdon, for plaintiffs in error.

NAT TIPTON, Assistant Attorney-General, for the State.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

These two cases, involving the same question, are heard here together, though tried separately below, where both plaintiffs in error were convicted of unlawful possession of liquor. Vickers was given a fine of $300 and a jail sentence of five months and Rich a fine of $150 and sentence of ninety days.

Both men had many cases of whiskey on their premises, and were quite evidently engaged in the business of selling. They make but a single question. They say that the search which revealed their illegal possession, although made with search warrants in proper form, was unlawful because made by officers of the State Highway Patrol. The trial Judge overruled the objection made on this ground to the admission of the testimony of the officers making these raids.

The insistence is that search warrants may be issued to and served by County peace officers only, citing Code, sections 11897, 11903. These sections read:

Section 11897. "A search warrant is an order in writing in the name of the state, signed by a magistrate, directed to the sheriff, any constable, or any peace officer of the county, commanding him to search for personal property, and bring it before the magistrate."

Section 11903. "The warrant may be executed by any one of the officers to whom it is directed, but by no other person, except in aid of such officer, at his request, he being present and acting in its execution."

In the first place, it will be observed that the Section last above quoted provides that, "The warrant may be

executed by any one of the officers to whom it is directed,'' and the preceding Section, 11901, reads as follows:

''Warrant to issue, if cause shown.—If the magistrate is satisfied of the existence of the grounds of the application, or that there is probable ground to believe their existence, he shall issue a search warrant signed by him, directed to the sheriff, any constable, or any peace officer, commanding him forthwith to search the person or place named for the property specified, and to bring it before the magistrate. (Modified.)''

It will be seen that this section authorizes the magistrate to issue the warrant to ''any peace officer,'' without the restriction, ''of the county,'' contained in Section 11897. It is this section which directly defines and controls the authority of the magistrate in his issuance of the warrant. It must be conceded that ''peace officer'' is an exceedingly comprehensive term, embracing public officials of practically every class and position, Judges of all degrees, policemen, mayors, aldermen, etc., etc., whether county, municipal or State representatives. Code section 11418, which denominates the sheriff as ''the principal conservator of the peace in his county,'' is followed by Section 11419, which reads:

''The judicial and ministerial officers of justice in the state, and the mayor, aldermen, marshals, and police of cities and towns, are also conservators of the peace, and required to aid in the prevention and suppression of public offenses, and for this purpose may act with all the power of the sheriff.''

It can hardly be questioned that a search warrant issued by a magistrate to ''any peace officer'' (Code, section 11901), is lawful when issued to any ''conservator of the peace.'' The members of the State Highway Patrol are police officers, and the duty to keep the peace.

would seem to be imposed upon them, if not in terms, by clear implication. And, in this connection, it may be of some significance that the proof is that the State officer who acted in the instant cases had been assigned to work in Carroll County.

In the second place, the Assistant Attorney-General relies on Paragraph 3, of Section 15, Chapter 49, Public Acts of 1939, as expressly conferring authority upon members of the Highway Patrol to enforce the law prohibiting the possession of liquor in dry territory. This statutory provision reads as follows:

"The State Highway Patrol shall be authorized and it shall be their duty to assist the County and Municipal police authorities to enforce the provisions of this Act, and any other Act relating to the manufacture, sale or distribution of alcoholic beverages, as herein defined, in any County or Municipality failing to adopt the rights granted under the various provisions of this Act."

It is conceded that Carroll County is dry territory and that the possession of liquor in these cases was unlawful, but counsel for plaintiffs in error contend that this statute should be construed to confer authority upon officers of the Highway Patrol to act only in conjunction with the Sheriff or other strictly County officers in such cases only as one or more of these officers, taking the initiative and procuring the warrant, may invite or command the State Patrol to "assist" them.

The case for plaintiffs in error rests on the contention that the language of this statute conferring on the State Highway Patrol authority to "assist the County and police authorities" should be thus narrowly construed. We think not.

As suggested on the brief for the State, since these local officers already had full power to call on members of the

Highway Patrol, or, indeed, any private citizens, to "assist" them in this restricted sense (Code, section 699), such a construction would deprive the statute of all usefulness and hold the Legislature to have done a futile thing.

█ Nor do we think the context supports this narrow view. The Legislature was dealing with a widespread practice of law violation likely to be aggravated in the counties left legally "dry" by the conversion of adjacent counties into legally "wet" territory under this Act of 1939. To meet this situation authority was conferred and the duty imposed on the members of the Highway Patrol to assist the officers already primarily dedicated to this purpose in this particular branch of law enforcement. They are to assist in the abatement of a particular evil— not in its abatement by a particular officer. By raids and arrests when this law violation is brought to their attention, this group of officers, constantly patroling the public roads, will contribute to the suppression of the evil and thus render assistance in this broad sense. In the use of the word "assist," it is the end which is considered by the Legislature, not the particular or immediate agency. The object was not to authorize the patrol to assist this or that local officer, on this or that occasion, and only when summoned by him, but to assist the body of local officials, in enforcement generally of a general law. Webster defines "assist" as, "to give support to in some undertaking." It is in this broad sense that the word is used in this statute.

█ In this view, it can hardly be doubted that in the exercise of the authority conferred by this statute "to enforce the provisions of this Act, and any other Act relating to . . . alcoholic beverages," would include the execution of search warrants. This is a natural and

necessary incident of the duty imposed by this statute. No doubt, the organization and selected personnel of the Highway Patrol, and particularly the duty resting on these officers of keeping the highways clear of drunken drivers, induced the enactment of this statute vesting in them this authority to assist in the enforcement of the liquor laws. Affirmed.

GREEN, C. J., and COOK, J., concur.

MCKINNEY and DEHAVEN, JJ., dissent.

MR. JUSTICE MCKINNEY (dissenting).

The single question presented for decision in these cases is the authority or power of a member of the State highway patrol to execute a search warrant.

The controlling Code provisions are as follows:

11897. ''A search warrant is an order in writing in the name of the state, signed by a magistrate, directed to the sheriff, any constable, or any peace officer of the county, commanding him to search for personal property, and bring it before the magistrate.''

11901. ''If the magistrate is satisfied of the existence of the grounds of the application, or that there is probable ground to believe their existence, he shall issue a search warrant signed by him, directed to the sheriff, any constable, or any peace officer, commanding him forthwith to search the person or place named for the property specified, and to bring it before the magistrate.''

11903. ''The warrant may be executed by any one of the officers to whom it is directed, but by no other person, except in aid of such officer, at his request, he being present and acting in its execution.''

The first quoted section originated with the Code of 1932, while the other two sections were contained in the Code of 1858. Prior to 1932 the statute provided that the search warrant might be directed "to any lawful officer." Section 5322, Code of 1858. But the Legislature in 1932 saw proper, by clear and unambiguous language, to limit the direction of search warrants "to the sheriff, any constable, or any peace officer of the county."

The State Highway Patrol was created by Chapter 25, Extraordinary Session of 1929, and their powers and duties, as set forth in the Act and carried into the Code, are as follows:

11462. "It shall be the duty of the members of the Tennessee highway patrol, under the direction of the commissioner of finance and taxation, to patrol the state highways and to enforce all laws, and all rules and regulations of the department of highways and public works regulating traffic on and use of said highways; and under the direction of the commissioner of finance and taxation to assist him and the county court clerks of the state in the collection of all taxes and revenue going to the state, and in the enforcement of all laws relating to same."

11463. "The members of the Tennessee highway patrol are clothed with all such necessary police powers as will enable them properly to perform their duty, as outlined and defined in the preceding section, including the right to make arrests and the right to serve criminal warrants and subpoenas for witnesses; the fees taxed to them for arrests and service of warrants, only for violations of the laws of the road and violations of the revenue laws of the state, and subpoenas, to be paid over to the commissioner of finance and taxation, and credited to the motor vehicle division. Each patrol appointed shall be at least twenty-one years of age; and all members of the

Tennessee highway patrol when on duty shall wear a uniform to be designated by the commissioner of finance and taxation."

It will be observed that the authority to serve criminal warrants is limited to cases where the highway laws are violated. There is certainly nothing in this creative act authorizing members of the State Highway Patrol to execute search warrants. Since this police force was created in 1929, the members thereof being State officers, it is not unlikely that the legislature in enacting Section 11897 of the Code of 1932 did so for the express purpose of denying to these State officers authority to execute local search warrants. It may be seriously doubted whether the Legislature intended that a State highway patrolman residing in Sullivan County should execute a search warrant in Shelby County.

The majority opinion is based upon Section 11901, in which the magistrate is authorized to direct the warrant "to the sheriff, any constable, or any peace officer," the words "of the county" contained in Section 11897 being omitted. In my opinion, those words are implied, and the latter section evidently refers to and should be construed in conjunction with the former. I see no basis for holding that the Legislature in 1932, in creating a new section limiting the authority to execute search warrants to "county peace officers" by re-enacting Section 5322 of the Code of 1858, intended to enlarge the authority as to include all peace officers, whether State, county, or municipal. These two sections are included in the same chapter of the Code, the title of which is "Search Warrants," and should be construed together.

The duties of the members of the State Highway Patrol were further enlarged by subsection 3 of Section 15 of Chapter 49, Public Acts of 1939, which provides as follows:

"The State Highway Patrol shall be authorized and it shall be their duty to assist the County and Municipal police authorities to enforce the provisions of this Act, and any other Act relating to the manufacture, sale or distribution of alcoholic beverages, as herein defined, in any County or Municipality failing to adopt the rights granted under the various provisions of this Act."

The authority thus conferred of assisting the county authorities in the enforcement of the liquor laws is in consonance with Section 11903 of the Code, copied herein.

It would have been an easy matter for the Legislature to have provided that such State officers should be empowered to execute search warrants, but it did not see fit to do so.

This court, in my opinion, has usurped the legislative prerogative in reading into this plain statute that a search warrant may be directed to and executed by a member of the State Highway Patrol. If the law-enforcing agencies of the State deem it wise and proper to confer such authority upon members of the State Highway Patrol, their application should be made to the Legislature rather than to the courts.

Justice DeHaven concurs in this opinion.

### Opinion on Petition to Re-hear.

Mr. Justice Chambliss delivered the opinion on Petition to Rehear.

A petition to re-hear presents for the first time a challenge of the constitutionality of the Act of 1939, Chap. 49, particularly Paragraph 3 of Section 15 thereof, which

we held to authorize officers of the Highway Patrol to serve search warrants in liquor cases in Carroll County.

Parenthetically it may be remarked that, while the question of constitutionality may be first raised at any time, even on a petition to re-hear, the burden, always on those attacking the constitutionality of an Act of the Legislature, is increasingly heavy when raised for the first time by petition to re-hear. Not only does the general presumption of constitutionality apply, but a presumption also arises from this after-thought attack that the constitutional defect alleged is not clear and obvious, since it did not before appear, either to astute and diligent counsel, or to the Courts which have construed the Act.

We have carefully considered the able argument attacking the constitutionality of the clause of the Act involved, but are not convinced that the attack is well made. The provision of the Act in question does not introduce matter independent of the general subject, but grows naturally out of it. As said in the original opinion, in this Act ''The Legislature was dealing with a widespread practice of law violation likely to be aggravated in the counties left legally 'dry' by the conversion of adjacent counties into legally 'wet' territory under the Act of 1939.'' As a natural incident the Legislature might properly provide for additional means of protection of this territory left dry, in order that the ''wet'' privileges conferred on given territory might not adversely affect the territory left legally dry. This is all this provision does. The Act as a whole, as indicated by its caption, deals with the general subject of the regulation of the sale of liquor. Authorizing its sale under prescribed conditions, it was germane to provide that it should not be otherwise or elsewhere sold, and provide

for enforcement of this limitation. The constitutional provision relied on that "no bill shall become a law which embraces more than one subject," art. 2, section 17, has no application where "the unity of the subject is to be found in the ultimate object of the statute," as well said by the learned Attorney General.

It is, also, we think, apparent that the restrictions and conditions placed by this Act upon the sale of liquor in a county voting itself wet would be in large measure defeated if unrestricted sales in other and adjacent territory are not suppressed. All the carefully provided regulations prescribed by this Act for the sale of liquor in legally wet territory would be weakened if liquor might with impunity be sold free of these regulations in other territory. This Act of 1939 has been described by this Court as an amendment to existing prohibition laws. *Chadrick* v. *State*, 175 Tenn., 680, 683, 137 S. W. (2d), 284. In so amending these laws it was properly within the scope and object to include provisions against the weakening of the prohibition laws generally. Reference is made to language used in the opinions in *Akers* v. *State,* 175 Tenn., 674, 137 S. W. (2d), 281, and *Chadrick* v. *State,* 175 Tenn., 680, 137 S. W. (2d), 284, as recognizing the "effect" and "purpose" of the Act of 1939 to be limited to counties voting to come within the Act. That is true, in the general sense and context in which these expressions were used, but this Act is not a local law, in the sense of being passed for the benefit of a particular county only. It is a general State wide law, applicable to the entire State, but effective for its general purposes in such counties only as may adopt it. And, as hereinbefore indicted, it is competent for such an Act to provide, as a fair and reasonable incident, for preventive

measures applicable in other territory. Attention is directed to the elaborate reply brief of the Attorney General. Further discussion is not required. The petition must be dismissed.

GREEN, C. J., and COOK, J., concur.

MCKINNEY and DEHAVEN, JJ., dissent.