CITY OF CHATTANOOGA, Tennessee,
et al., Petitioners,

v.

The TENNESSEE ALCOHOLIC
BEVERAGE COMMISSION et
al., Respondents.

Supreme Court of Tennessee.

June 9, 1975.

Eugene N. Collins, City Atty., Gary D. Lander, Sp. Counsel, Chattanooga, for petitioners.

R. A. Ashley, Jr., Atty. Gen. & Reporter, William C. Koch, Jr., Asst. Atty. Gen., Nashville, Leroy Phillips, Jr., Douglas Meyer, Chattanooga, for respondents.

HENRY, Justice.

This suit involves the issuance of a certificate of good moral character to operate a retail liquor store. The City of Chattanooga declined to grant the certificate. The Alcoholic Beverage Commission (ABC) overruled the City and granted the certificate. On review by the Circuit Court of Davidson County, the action of the ABC was upheld. The City of Chattanooga has appealed.

There are two controlling questions, viz.:

a. The respective powers of Tennessee municipalities and The State Alcoholic Beverage Board in connection with the issuance of certificates of good moral character as a condition precedent to the issuance of a

license to sell intoxicating liquors in package stores.

b. Whether the ABC exceeded its jurisdiction, or acted illegally, arbitrarily or fraudulently in granting the certificate of good moral character to the applicant.

We discuss these questions seriatim.

## I.

A determination of the basic and principal question of the respective powers of the municipalities of Tennessee and the ABC can only be made after giving consideration to the history of liquor control legislation and judicial decisions relating thereto. In our extensive investigation into the matter, we have found no reported decision of this Court wherein this vital, historical consideration has been given.

Prior to the adoption of the Eighteenth Amendment to the Constitution of the United States, the right to sell intoxicating liquor in Tennessee was a taxable privilege, with licenses being issued by the clerks of the county courts of the various counties.[1] State regulation was yet to come. The prohibition amendment was ratified and became effective on 29 January 1919.[2] After the dismal failure of "the great experiment", and the era of lawlessness and official corruption it produced, the Eighteenth Amendment was repealed by the Twenty-first Amendment, which became effective on 5 December 1933.[3] The various states, after this Amendment, had full right to regulate traffic in intoxicating liquors, to include the right to enforce outright prohibition. *Ziffrin, Inc. v. Reeves*, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed. 128 (1939).

The sale of intoxicating liquors continued to be unlawful in Tennessee.[4] By Chapter 49 of the Public Acts of 1939, the sale of intoxicating liquors became legal in Tennes-

see, on a local option basis. This enactment was carried forward into the Code as Section 6648.4 et seq.; however, it was not a local option law in the sense of being passed for the benefit of a particular county only. It was a general, state-wide law applicable to the entire state, but effective for its general purposes only in such counties as adopted it. *Vickers v. State*, 176 Tenn. 415, 142 S.W.2d 188, 145 S.W.2d 768 (1940). The "bone dry law" continued in effect in counties not electing to come under the provisions of the local option law. *Renfro v. State*, 176 Tenn. 638, 144 S.W.2d 793 (1940).

At this time, and for the first time, state regulation came into being.

The Commissioner of Finance and Taxation (now Commissioner of Revenue) was given broad powers, including the right to enforce and administer the provisions of the Act, to make and enforce rules and regulations, and to *issue all licenses*, and revoke the same. (See Sec. 6648.7, Michie's Code of 1934, 1941 Replacement Volume). Sec. 6648.11 (Sec. 8, Ch. 49, Acts of 1939) related to retailer's licenses and provided that as a condition precedent to the right to issue a license, the applicant must first:

> . . . obtain and file with said application a certificate from the Mayor, or a majority of the Commission, City Council, or the legislative council of said municipality by whatever named designated . . . . .

Said certificate must state that the applicant is of good moral character and is personally known to the official signing the certificate, or that such official has made a careful investigation of the applicant's general character and from such investigation it is found to be good, and that in his opinion the applicant will refrain from a violation of this Act and is entitled to the license applied for. *Pro-*

---

1. See Sec. 991 et seq. Thompson's, Shannon's Code of 1917 and various public acts referred to therein.

2. See page 187, Vol. 1, T.C.A.

3. See page 191, Vol. 1, T.C.A.

4. See Sec. 11208, Michie's Codes of 1932 and 1938.

vided further, that no such officer shall arbitrarily refuse to issue such certificate to an applicant, and in the event of such arbitrary refusal the remedy is hereby given to the applicant to compel said official by writ of mandamus to issue said certificate. In the event the commissioner shall arbitrarily refuse to issue said license, he may likewise by mandamus be compelled to do so.[5] (emphasis supplied)

Thus it will be seen that the sole power of the city was to issue a certificate of good moral character, or to withhold the same, acting in good faith.

There the law stood when there came before this Court the case of *State ex rel. Saperstein v. Bass,* 177 Tenn. 609, 152 S.W.2d 236 (1941). This, the first pertinent case to be decided under the 1939 law, was a mandamus action seeking to compel the Mayor of Chattanooga to issue a certificate of good moral character. Relator was granted a permit to sell intoxicating liquors and issued a license after having obtained a certificate. On the same day his license was issued, the city amended its liquor ordinance with the result that relator's business location was one block outside the permissible retail zone. Notwithstanding the amendment he operated for the remainder of the year, but when he applied for a renewal of his certificate of good character it was denied him on the ground that his place of business was in an impermissible location.

The Court did not discuss the issues in the context of the exclusivity of the State's power to control the issuance of liquor licenses. It held that as a general rule a municipality has the right to limit the number of "saloons" (the case dealt with a package store); that under its charter, the City of Chattanooga might create areas in which liquor might be sold and that the manner and extent of the regulation rested within the judgment and discretion of the City. The Court did not construe the 1939 Act; in

fact, it was only mentioned in passing and generally was ignored. For these reasons and others hereinafter pointed out, the holding of *Saperstein* has no bearing on the issues presented in the instant suit.

In *State ex rel. Major v. Cummings,* 178 Tenn. 378, 158 S.W.2d 713 (1942), a case wherein an applicant had been denied a certificate of good moral character because his business was located in a prohibited area, the Court followed *Saperstein, supra.* The Court held that "the fact that a license has been granted by the State does not preclude the municipal authorities from making reasonable regulations pertaining to the sale of liquor," and "a license does not protect the holder from such police regulations affecting the trade as are not unreasonable or oppressive." Again the Court does not construe the 1939 act or analyze the respective powers of the City and the Commission.

The next case of relevance and significance, and the most comprehensive of all pre-1949 cases is *State ex rel. Veal v. Mayor and Aldermen of Dyersburg,* 184 Tenn. 1, 195 S.W.2d 11 (1946). Dyersburg, by ordinance, had limited the number of retail liquor stores. Relator applied for a certificate of good moral character as a condition precedent to obtaining a license and was refused solely because the result would have been an excessive number of liquor stores under the ordinance. A mandamus action ensued.

The Court's holding is unmistakably clear:

The officials of a municipality have the right to refuse to grant a certificate of good moral character, notwithstanding the absence of moral turpitude, if the issuance of such certificate would make it legally possible to violate a legally authorized ordinance regulating the sale of intoxicating liquor within the boundaries of the municipality.

5. The emphasized portion was deleted by the 1949 Amendment. See *infra.*

The Court upheld the general right of municipalities, under their police power to adopt stringent regulations governing the retail sale of intoxicating liquors, to include a limitation on the number of retail liquor stores.

I reiterate that *Saperstein, Major* and *Veal* were all decided before *1949.*

In 1949 liquor control in Tennessee "crossed the Rubicon". Municipalities lost all vestige of their rights—if they ever had any—to do anything except grant or refuse to grant certificates of good moral character.

In 1949, there came before the Legislature an act (H.B.1371; S.B.1036), designed to amend the 1939 local option act. Specifically, it was proposed to strike from Sec. 6648.11, *supra,* the provision (underscored in prior quotation) relating to the remedy of mandamus, and, more importantly to add to the section, inter alia, the following language:

The commissioner shall consider this certificate together with all other evidence which he may obtain by investigation or otherwise in determining whether said license shall be issued.

Additionally, there was added to the same section an elaborate procedure for a hearing before the commissioner in any case where a certifying official had acted "wrongfully, illegally or arbitrarily", and providing that:

The commissioner shall make such order granting or refusing said license as, *in his discretion,* the entire record at such hearing shall justify . . . Any party to said hearing may review said order by common law writ of certiorari in the manner provided for review of all other orders . . . (emphasis supplied)

Reference to page 1637 of the Senate Journal for 1949, will reveal that immediately following its passage, Senator Charles M. Everhart of Sullivan County, explained his vote with these incisive words:

Since we do not have legalized liquor in my area, I am not concerned with that angle. However, I consider this measure a *"body blow"* to Home Rule which I have consistently advocated. *It removes control of local matters from hands of local officials and for that reason I voted against the bill.* (Emphasis supplied)

But the Senator's philosophy did not prevail and the municipalities were effectively stripped of all their power to regulate intoxicating liquors, except as to the right to grant or withhold certificates of good moral character (on the basis of character alone).

The first major case to come before this Court, after the passage of Ch. 284 of the Public Acts of 1949,[6] was *Boyd v. Burmaster,* 193 Tenn. 338, 246 S.W.2d 36 (1952), wherein the issue was framed thusly:

The ultimate question is whether the complainant commissioners have the final authority in determining whether an applicant shall have the privilege of selling liquor in Oak Ridge or whether the final authority is vested in the Commissioner of Finance and Taxation.

The applicants were denied a certificate of good moral character. They appealed to the Commissioner alleging that the denial was wrongful, illegal and arbitrary. The Commissioner conducted a hearing and granted the license. The Supreme Court sustained the Commissioner and, with obvious reference to *Saperstein, Major* and *Veal,* stated:

From an examination of Code Section 6648.12a, it will be seen that decisions under Chapter 49, Public Acts of 1939, must be viewed in the light of such changes. See *State ex rel. Harris v. Beasley, Mayor et al.,* 182 Tenn. 529, 188 S.W.2d 336.

Under Chapter 49, Public Acts of 1939, it was necessary to have such certificate of

---

6. Sec. 5, Ch. 284, Acts of 1949 was carried forward into the Code as Sec. 6648.12a.

good moral character and unless the applicant had such a certificate, the Commissioner of Finance and Taxation was without authority to override this act on the part of the local authorities. Decisions of this Court prior to the enactment of Section 6648.12a are that the certificate of good moral character to be issued by local authorities was a condition precedent to the issuance of license by the Commissioner of Finance and Taxation. *Evidently Section 6648.12a was enacted to meet these decisions. State ex rel. Harris v. Beasley, Mayor et al., supra; State ex rel. Park v. Beasley,* 182 Tenn. 523, 188 S.W.2d 333. (emphasis supplied).

We have held that the exercise by the Commissioner of Finance and Taxation of delegated discretion in the regulation of liquor traffic will not be interfered with by the courts. *McCanless v. Klein,* 182 Tenn. 631, 188 S.W.2d 745; *Wise v. McCanless,* 183 Tenn. 107, 191 S.W.2d 169.

This case, holding that the commissioner has final authority and can override local authorities seemed to have, at long last, settled the law in Tennessee.

But, alas, in 1956, the settled law became unsettled when this Court handed down its decision in *Safier v. Adkins,* 199 Tenn. 574, 288 S.W.2d 441 (1956).

Safier, a Memphis liquor store owner, was forced to move his store because of a change of ownership of the property on which it was located. Admittedly a man of good character, his application for a certificate to that effect was denied solely because of the proposed location of his new operation. He made application to the Commissioner, a hearing was conducted, his application was denied, petition for certiorari was filed and dismissed.

7. The renewal of a license was involved in this case, therefore 57–126 T.C.A. was involved as opposed to 57–121 governing initial applications, but the quoted matter is identical in the two sections.

8. The Department of Finance and Taxation is now the Department of Revenue. See

Disapproval was predicated upon a city ordinance that provided in material part:

"No certificate of good moral character will be issued pursuant to Section 6648.-12a of the Code of Tennessee [T.C.A. § 57–121] in any case where the location of said proposed retail liquor store has been disapproved by the Board of Commissioners of the City of Memphis."

The Court expressly held "(t)he aforesaid ordinance is not in conflict with the general law."

The Court quoted the 1949 amendment providing that "the Commissioner shall consider this certificate together with all other evidence which he may obtain by investigation or otherwise in determining whether said license shall be issued", and correctly holds that this applies where the applicant presents a certificate of good moral character.[7]

The Court then recognizes the power of the Commissioner of Finance and Taxation (now ABC) to determine if the certificate has been wrongfully, illegally or arbitrarily refused, and holds that:

The Commissioner of Finance and Taxation[8] had *full* authority under the aforesaid Code Section *to determine if the City Commissioners had acted arbitrarily in refusing a certificate to Mr. Safier .  .* (Emphasis supplied)

Then the Court quoted from *State ex rel. Major, supra,* as follows:

The state's granting (sic) of a license to sell intoxicating liquors does not preclude municipal authorities from making reasonable regulations pertaining to the sale thereof.

A state license to sell intoxicating liquors does not protect holder from such police

Sec. 4–301 et seq. T.C.A. By Ch. 257, Acts of 1963 the Alcoholic Beverage Commission was created and all duties and powers formerly exercised by the Commissioner of Finance and Taxation were transferred to it.

regulations affecting trade as are not unreasonable or oppressive.

Relying on *Veal,* the Court holds that it will "never substitute its judgment for that of officials vested with discretion, with reference to an act calling for the exercise of that discretion, unless the officials have clearly acted arbitrarily and without regard to duty."

I had thought that the most excellent opinion of this Court in *Boyd v. Burmaster, supra,* had laid to rest the question of the right of the city to regulate, but apparently it did not. *Boyd* is not even alluded to in the opinion and, citing *Saperstein* and *Major,* the Court holds:

> (W)e are of opinion that municipal authorities are empowered to fix the places where intoxicating liquor may be sold and specify the number of such places in accordance with their charter provisions.

This case strengthens the hand of the commission, and yet, simultaneously, solidifies the power of the municipality and reinstates the controversy settled in *Boyd v. Burmaster, supra.*

The last case of relevance and significance to be decided by this Court was *Lakewood v. Alcoholic Beverage Commission,* 219 Tenn. 510, 410 S.W.2d 897 (1967). There the City of Lakewood had passed an ordinance making it unlawful to sell alcoholic beverages within the corporate limits. Applicants, admittedly persons of good moral character, were denied a certificate on the basis of this ordinance and further on the basis of insufficient full-time law enforcement personnel and proximity to schools and churches. On appeal to the ABC, the Commission found (1) that applicants were of good moral character; (2) that the prohibition ordinance was in conflict with the statewide local option law; (3) that the proposed location was not in too close proximity to a school or church, and (4) that full-time law enforcement was available. The ABC granted the license.

Lakewood petitioned for certiorari and the Circuit Court of Davidson County upheld the ABC, saying, inter alia:

> (T)he Commission had authority to review the action of the City of Lakewood in refusing to issue certificates of good moral character under Section 57–121, Tennessee Code Annotated. Petitioner in this Court *admits the good moral character of respondents, and it therefore appears that the refusal to issue certificates of good moral character would be arbitrary and illegal unless there exists some other legal reason for refusing the certificate.* (Emphasis supplied).

The trial judge did not elaborate on the phrase "unless there exists some other legal reason for refusing the certificate".

This Court held that Sec. 57–121 T.C.A. authorizes the ABC to review those cases where an applicant is denied a certificate of good moral character by municipal officials, and that the purpose of the review is to determine whether the certificate has been wrongfully, arbitrarily, or illegally refused.

The Court, in deciding this case, made this solemn pronouncement:

> T.C.A. Sec. 57–101 et seq. presents a *comprehensive scheme* of legislation regulating the manufacture and sale of alcoholic beverages in the State of Tennessee . . . *Beyond the subject of certificates of good moral character and a degree of reasonable regulation, municipalities are not vested with any administrative or other functions so far as licensing of retail liquor outlets is concerned.*

The clear import of this holding is that municipalities may exercise "a degree of reasonable regulation", *after* the license is issued, but that prior to the issuance of the license, the sole power of the municipality is to grant or withhold certificates based upon the applicant's character as demonstrated by habits, traits, moral standards and the conventional guidelines by which character is determined. This conclusion is bolstered

by the lack of a statutory predicate for any other action on the part of the municipality.

Appearing in the opinion, out of sequence, and as an obvious afterthought is an isolated sentence reading as follows:

Nothing in this opinion is intended to indicate that a municipality may not reasonably regulate the sale of intoxicating liquors within its municipal limits.

To make this a correct statement of the law, the regulation contemplation must relate to the *manner* of sale and not the *fact* or *right* of sale.

*Lakewood* was decided while Sections 57–121 and 57–126 T.C.A. were in force and in effect in their present form. The former section governs the initial application while the latter governs renewals. They are virtually identical insofar as the issues presented in this suit are concerned. We quote the pertinent part of Sec. 57–121:

Said certificate must state that the applicant or applicants, who are to be in actual charge of said business, are of good moral character and are personally known to the official or officials signing the certificate, and if a corporation, that the executive officers or those in control are of good moral character and personally known to the official or officials signing said certificate, or that such official or officials have made careful investigation of the applicant's general character and from such investigation it is found to be good, and that in his opinion the applicant will refrain from a violation of §§ 57–106—57–151, and is entitled to the license applied for. The alcoholic beverage commission shall consider this certificate together with all other evidence which it may obtain by investigation or otherwise in determining whether said license shall be issued.

Provided, that in those cases where the applicant is unable to obtain such certificate from the proper certifying official, if the applicant shall file with the alcoholic beverage commission together with his application a petition in duplicate stating that he has made application to said certifying official for said certificate and same has been wrongfully, illegally or arbitrarily refused and otherwise setting forth reasons under §§ 57–106—57–151 why he is entitled to such license notwithstanding the refusal aforesaid and wherein said refusal is wrongful, illegal or arbitrary, the alcoholic beverage commission shall hold a hearing to determine whether said license shall be issued. The commission shall give the applicant and the certifying official ten (10) days' notice of the time and place of said hearing, to be served in the same manner and within the same time as other notices of hearings prescribed herein and shall, at the same time, furnish the certifying official with a copy of the applicant's petition. The hearing shall be held as are other hearings provided for under §§ 57–106—57–151. The commission shall make such order granting or refusing said license as, in its discretion, the entire record at such hearing shall justify and such order shall be effective from its date. Any party to said hearing may review said order by common law writ of certiorari in the manner provided for review of all other orders under § 57–127. (citations to statutes omitted).

Nothing in this statute confers upon the municipality any right, responsibility, power or duty, in connection with the issuance of liquor licenses by the ABC except to pass upon the moral fitness of the applicant. The duty of the ABC is plenary, exhaustive and preemptive of any other right of the city.

Since the municipalities are given no authority in this regard under the local option liquor law, some of the decisions have proceeded upon the assumption that old charter provisions giving them the right to regulate sale and traffic in intoxicating liquors continue to be valid and operable.

This completely overlooks the fact that Title 57, Tennessee Code Annotated, contains the whole "law and the prophets" governing the sale of liquor in Tennessee. It is a general act of statewide application—a scheme of control applicable to all counties (which have no charters) and cities alike, which bring themselves within its orbit. To permit local units of government to regulate the sale of intoxicating liquor within their boundaries, not only would apply one rule to municipalities and another to counties and other civil districts, but also would frustrate the essential uniformity of the entire system and machinery and would lead to confusing inequalities without sound reason or basis. The sale of intoxicating liquor is an emotionally charged issue. Standardization of licensing and enforcement is in the public interest, and is the public policy of the State as expressed by the Legislature.

We hold that the general law of the state, as incorporated in the Local Option Liquor Law, supersedes all private acts and all charter provisions. *Trotter v. City of Maryville,* 191 Tenn. 510, 235 S.W.2d 13 (1950); *Clark v. Vaughn,* 177 Tenn. 76, 146 S.W.2d 351 (1941).

## II.

■ We must keep in mind the legal situation presented by this controversy. This case came to the Circuit Court by way of common law writ of certiorari (See Sec. 57–121 T.C.A.). As held by this Court in *Little v. MacFarland,* 206 Tenn. 665, 337 S.W.2d 233 (1960).

" * * * Such a writ does not bring up for determination any question except the question of whether the Commissioner exceeded his jurisdiction, or acted illegally, arbitrarily or fraudulently. Under such a writ questions of law only are reviewed by the Court. * * * The Court is limited to whether or not this *hearing officer* has exceeded his jurisdiction or acted fraudulently, illegally, or

arbitrarily. If there is any material evidence to sustain the finding of the hearing officer under such circumstances and there is no illegal, fraudulent or arbitrary action therein, the court must sustain the finding of the hearing officer."

■ In this case we have a concurrent finding of fact between the ABC and the Circuit Court of Davidson County. Such findings should not be disturbed in this Court if supported by any material evidence. *Pack v. Royal-Globe Insurance Companies,* 224 Tenn. 452, 457 S.W.2d 19 (1970).

■ When we approach the situation in that light it becomes evident that the action of the ABC was entirely proper and wholly correct. A fair reading of the record establishes that there is no merit to the insistence that the ABC.exceeded its jurisdiction or acted fraudulently, illegally or arbitrarily. There was arbitrary action in this case, but it was wholly on the part of the City of Chattanooga.

Witnesseth: the fact that fifty-three liquor stores are clustered in a relatively compact area of the central city comprising, perhaps, less than ten percent of the overall area of the city and none are permitted outside of this area, although a limited few are located on the fringe area of the central city.

Witnesseth: that a substantial portion of the City of Chattanooga lies north of the Tennessee River and no retail package stores are located in this area—except the Poseys who are operating under the license granted by the ABC.

Witnesseth: that in this area north of the river there are at least five places where liquor is sold by the drink, including one which is in immediate proximity to applicant's location.

Witnesseth: that applicant's proposed location is nearer to the city hall and to police protection than some of the liquor-by-the-

drink establishments which are in scattered locations throughout the city.

Witnesseth: that applicant's proposed location is in a commercial zone, near a shopping center, a supermarket, a K-Mart, several service stations, a drug store, a doctor's office, several restaurants, a Western Auto Store, a branch bank and various and sundry other establishments all in this "city within a city."

These facts and circumstances indicate a consistent pattern of discriminatory regulation. When viewed in the light of the reasons advanced for refusing to issue the certificate they become even more indefensible.

It is suggested that it would be difficult to afford police protection to liquor stores outside the central city. Perhaps so but the same is true of branch banks and other legitimate businesses in outlying urban areas. Most assuredly a retail liquor store would create no more problems and would be no more difficult to police than a liquor-by-the-drink establishment.

It is suggested that the public does not want liquor stores outside the central city. The short answer to this is that we do not have local option within local option. The sale of liquor is legal in Chattanooga and being legal, may not be made dependent on nebulous notions of popular desires. The sale of liquor, and its use, are matters which tend to provoke emotional reactions. We are sure that there are those who do not want liquor to be sold at any time, in any place, by anyone in Chattanooga. We are also sure that those citizens who purchase intoxicating liquors are somewhat less than enthusiastic over being forced to journey into the central city to make their purchases.

It is suggested that glaring and blazing neon signs would be unsightly and objectionable. We doubt that any liquor store located on Hixson Pike would have neon signs that would compete in size or brilliance with some of the larger and more lucrative businesses in the immediate area. The city is not without recourse in this area and may validly and reasonably regulate the size of signs.

In summary, the City of Chattanooga offers no reasonable justification or excuse for its oppressive and restrictive ordinance. Its action in denying the applicants a certificate of good moral character was wrongful, illegal and arbitrary.

The strange notion that a person's "good moral character" is somehow keyed to the location of his business is at variance with logic and frustrates the English language. In this particular case, it is incredible that there is an insistence that Mr. Posey is unquestionably a man of good moral character so long as he does business on Rossville Avenue in downtown, but when he changes his business location he loses his morality, *ipso facto,* and becomes a heathen on Hixson Pike. This is sheer sophism and legal gimmickry and is the type of reasoning that causes citizens to sneer at the law and scoff at the courts.

The Alcoholic Beverage Commission would have been derelict in its duty and recreant in its responsibility had it not corrected this intolerable situation.

We would hold:

(a) that the Tennessee Local Option Law, as contained in Sec. 57–101 et seq., T.C.A., vests in the Alcoholic Beverage Commission, the exclusive right to license retail liquor stores in Tennessee and to take such other, further and additional action in connection therewith as may be necessary, subject only to the right of the local governmental unit to issue certificates of good moral character, based alone, upon trad40tional guidelines for the determinati of character.

(b) that the action of the local governing unit in issuing such certificates is not binding upon the ABC but is advisory only.

(c) that the action of the local governing unit in denying such certificates, if alleged to be wrongful, illegal or arbitrary, is subject to review by the ABC, along with the other issues involved, and, upon a finding that the certificate has been wrongfully, illegally or arbitrarily denied, the ABC should issue the license, providing all other requirements are satisfied.

(d) that a certificate of good moral character is merely an official determination that an applicant is a law abiding citizen of good repute and character.

(e) that there is no reasonable relation between the location of one's business and his good moral character.

(f) that all pertinent charter provisions and private acts are superseded by the general law and are of no force and effect.

(g) that local governing bodies have the right to reasonably regulate the operation of retail liquor stores only after they have been licensed in accordance with the general law.

These views expressed herein do not necessarily coincide with our personal philosophical views with respect to local control of liquor. The Legislature has mandated an orderly procedure for its sale and that procedure should not be circumvented by strained construction either by the courts or by local governing bodies. Those dissatisfied must address their prayer for relief to the Legislature.

FONES, C. J., concurs.

BROCK, J., concurs in results with separate opinion.

COOPER and HARBISON, JJ., dissent.

BROCK, Justice (concurring).

I concur in the result reached by my brothers Henry and Fones, but not in the opinion prepared by Mr. Justice Henry. I particularly disagree with the conclusion that municipalities of this state no longer possess any power to limit the number of retail liquor stores or to limit the permissible locations of such stores within their corporate boundaries. I agree with my brothers Cooper and Harbison that municipal corporations retain such power, but I cannot agree with their conclusion that the attempted exercise of that power by the City of Chattanooga in this instance is a valid one. I shall attempt to explain my conclusions in detail.

It is important to keep in mind the limited scope of our permissible review in this case. The controversy is before us pursuant to the writ of common law certiorari. T.C.A. Section 57–121. Thus, we are free to determine only whether or not the Alcoholic Beverage Commission (A.B.C.) exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently and whether the record contains any material evidence to support its findings. *Little v. MacFarland,* 206 Tenn. 665, 337 S.W.2d 233 (1960); *Safier v. Atkins,* 199 Tenn. 574, 288 S.W.2d 441 (1956); *Boyd v. Burmaster,* 193 Tenn. 338, 246 S.W.2d 36 (1952).

The pertinent facts of the case and its history are detailed in the opinion prepared by Mr. Justice Henry and I will not repeat them here.

The A.B.C. clearly acted legally and within its jurisdiction in granting to the Poseys a license to operate a retail liquor store at 4027 Hixson Pike in the City of Chattanooga, although the city had refused to issue a certificate of good moral character. T.C.A. Section 57–109(3)(a); *City of Lakewood v. Tennessee Alcoholic Beverage Commission,* 219 Tenn. 510, 410 S.W.2d 897 (1967); *Boyd v. Burmaster, supra.* The statute expressly provides that the A.B.C. has power to overrule the refusal of the city to issue a certificate of good moral character if such refusal, after a hearing, is found to have been "wrongful, illegal, or arbitrary," T.C.A. Section 57–121, and this Court has expressly held that the A.B.C., in making this determination, possesses the quasi judicial power

to determine the effectiveness of a city ordinance upon which the city has based its refusal to issue such certificate. *City of Lakewood v. Tennessee Alcoholic Beverage Commission, supra.*

No claim is made that the A.B.C. acted fraudulently, so the inquiry narrows down to a determination whether or not the A.B.C. acted arbitrarily and whether the record contains any material evidence to support its findings.

The city does not deny that the Poseys possess the good moral character required by the statute for issuance of the certificate in question. Nevertheless, the city refused to issue the certificate because the proposed location for the retail store, 4027 Hixson Pike, was not on one of the streets designated in the city's ordinance for the lawful location of retail liquor stores. Chattanooga, by ordinance, limits the total number of retail liquor stores to be operated within its boundaries to fifty-four (54) and limits the location of such stores to certain named streets and portions of streets contained in a minuscule portion of the city. See Section 5–85, Code of the City of Chattanooga.

I am firmly convinced that Chattanooga's action in refusing to issue a certificate of good moral character to the Poseys was "wrongful, illegal, and arbitrary" within the meaning of T.C.A. Section 57–121, so that the A.B.C. in overruling the city and issuing a license to the Poseys to operate a retail liquor store at 4027 Hixson Pike in Chattanooga did not act arbitrarily or without material supporting evidence.

In my view, it is wholly arbitrary for a city to refuse to issue a certificate of good moral character to a person who admittedly possesses such character. Whether or not such a certificate is to be issued should be based solely on a fair determination whether or not the applicant possesses such character. The practice which has grown up over the years whereby municipalities have sought to exercise their power to limit the location of retail liquor stores through the device of refusing to issue certificates of good moral character is most arbitrary and one which I cannot condone. I would urge that we condemn that practice and overrule the past decisions of this Court permitting it. There simply is no reasonable relation between a person's good moral character and his proposed location for a liquor store. A city has other and legitimate recourse whereby to seek compliance with an ordinance reasonably zoning or limiting the location of retail liquor stores within its boundaries. For instance, in the event the A.B.C. should grant a license for a location in violation of such a valid zoning regulation, a city could, in my opinion, intervene in the proceedings before the A.B.C. and assert its opposition and, if necessary, seek review of an adverse A.B.C. decision in the courts.

The next question is whether or not the city is vested with any power to limit the total number and permissible locations of retail liquor stores. The general local option law, T.C.A. Sections 57–106—57–151, contains no provision regulating the location of retail liquor stores other than T.C.A. Section 57–118, which requires only that the premises be situated either within a municipality, as defined in T.C.A. Section 57–106, or a civil district, as defined in T.C.A. Section 57–118.

Obviously the primary authority and responsibility for the issuance of licenses rests with the A.B.C. It is my view that Chattanooga, other municipal corporations and certain unincorporated civil districts (T.C.A. Section 57–118) of Tennessee do possess the lawful authority to reasonably limit the total number of retail liquor stores to be operated within their boundaries and to reasonably limit the permissible locations of such stores. In my opinion, this view is fortified by T.C.A. Section 57–113 (Chapter 52, Public Acts of 1951, Section 4). In that Act the General Assembly provided for the issuance of licenses for retail liquor stores in unincorporated civil districts of 30,000

population, or more, provided for the selection of commissioners, and then provided:

" . . . which said commission shall be vested with all the powers and duties with respect to the sale of alcoholic beverages within said district which may under state law be vested in the mayor and/or board of aldermen of a municipality of the state, *including the right to limit the number of such stores and to limit the permissible locations within such district where such stores may be situated.*" (Emphasis added.)

Prior to the enactment of this particular statute, this Court had held that the General Assembly had vested such powers in municipal corporations through the enactment of their charter provisions, e. g., *State ex rel. Veal v. Mayor and Aldermen of Dyersburg,* 184 Tenn. 1, 195 S.W.2d 11 (1946). Therefore, in my view, this statute constitutes a recognition and ratification by the General Assembly of the decisions of this Court that municipal corporations possess the powers in question. Of course, municipal corporations do not derive their powers from this Court but only from the General Assembly; however, in my view, the General Assembly, by enacting the various city charters and T.C.A. Section 57–113, has vested power in municipal corporations to reasonably limit both the number of retail liquor stores to be operated within their boundaries and the permissible locations of such stores. In this connection it is interesting to note that both the Poseys and the Attorney General, in their briefs, appear to concede that municipalities possess such powers. Thus, in the brief of the Poseys is this statement:

"It is conceded that the governing authority of a municipality is empowered to enact and administer local regulatory measures to fix the places where intoxicating liquor may be sold and to specify the number of such places."

(Of course, the brief further argues that such regulatory measures must be reasona-

ble.) In the brief filed by the Attorney General on behalf of the A.B.C. is the statement:

"This means that cities, when they choose to invoke their original charter authority to regulate alcoholic beverages, will only be allowed to regulate in the interstices of the state statutes. Thus, cities can regulate those facets of the retail sale of alcoholic beverages that are not specifically regulated by the A.B.C. pursuant to T.C.A. Sections 57–106 to 57–161. (Citing cases.) This means that cities may be able to reasonably set the number of retailers within their boundaries, but on the other hand, they cannot preclude the sale of liquor in their boundaries."

Although it is my view that the General Assembly has given to Chattanooga the power to reasonably limit or zone the locations for retail liquor stores, I am, nevertheless, of the opinion that the Chattanooga ordinance is an unreasonable and arbitrary exercise of such power, in that, it limits the permissible locations of retail liquor stores to a very small, compact area of the city. The prescribed area of permissible location of stores is so concentrated and so small in comparison to the total area of the city and the location of its population that the A.B.C. could reasonably find that the ordinance conflicts with and frustrates the purpose of the general law in somewhat the same manner as did the ordinance in *City of Lakewood v. Tennessee Alcoholic Beverage Commission, supra.* Although it does not totally prohibit the location of retail liquor stores within its boundaries, as did the *Lakewood* ordinance, it does forbid the location of such stores in a vast area of the city and it does so for no apparent reason. The ordinance does not specify any objective standards for determining permissible locations. Such regulations usually specify that locations be in commercial zones or be a certain distance from certain institutions and from other liquor stores; but, no such criteria appear in this ordinance which arbi-

trarily lists, by name, a few streets and portions of streets where stores may be located. In *City of Lakewood* this Court said:

"It is our view that T.C.A. Section 57–111, read together with the rest of Title 57 of Tennessee Code Annotated, evidences a clear legislative purpose that the sale of alcoholic beverages be *permitted or prohibited on a countywide basis.* Beyond any peradventure of doubt, any municipal ordinance in conflict with these statutes is ineffective." (Emphasis added.)

It is my view that the Chattanooga ordinance is so restrictive with respect to permissible locations of retail liquor stores that it is in conflict with what I believe to be the legislative purpose of the general law, viz., that such stores be fairly distributed throughout the city.

Further, it is my view that the prior decisions of this Court upholding Chattanooga ordinances on this question are not controlling for two reasons, viz., they predated the declaration in *City of Lakewood* of the legislative purpose of the general law and they likewise predated the massive increase in size, both geographically and population-wise, of the City of Chattanooga by recent annexations.

Finally, there is ample evidence in the record to uphold the determination of the A.B.C. that the location at 4027 Hixson Pike in Chattanooga was a suitable one. Cf. *City of Lakewood v. Tennessee Alcoholic Beverage Commission, supra.* It is the only retail liquor store in Chattanooga located north or west of the Tennessee River; it is in a highly developed commercial zone; and it certainly is not near to any other such store.

I would affirm the decision of the A.B.C.

COOPER and HARBISON, Justices (dissenting).

There are two issue involved in this case: (1) whether municipal corporations have any authority to regulate the sale of intoxicating liquors within their limits and (2) whether or not the ordinance of the City of Chattanooga restricting the sale of alcoholic beverages to a specified zone is arbitrary or unreasonable. The undersigned are firmly of the opinion that municipal corporations do have authority to regulate by ordinance the sale of alcoholic beverages within their limits and that T.C.A. § 57–121, as amended in 1949, does not prohibit cities from exercising such control. This Court has so held both before and since the enactment of T.C.A. § 57–121 in its present form, and explicitly so held in 1956, as hereinafter pointed out. The General Assembly has met either biennially or annually since the rendition of the opinion of this Court in the case of *Safier v. Atkins,* 199 Tenn. 574, 288 S.W.2d 441 (1956), and if that holding were not in conformity with the intent of the General Assembly, it seems clear to us that that body would have taken appropriate action in the intervening years. It has not done so, and in the meanwhile municipal corporations have relied upon the statute, as construed by this Court, as they were entitled to do, and we cannot now agree to a construction of the 1949 legislation which would remove or further limit the regulatory authority of municipal governments.

With respect to the second issue, as hereinafter pointed out, the Chattanooga ordinance was enacted in 1947 and has been subsequently amended on several occasions. It was expressly held valid and reasonable in these very proceedings upon this very same application for a license by the same applicants at the same location, and its holding was upheld by the court below. No appeal was taken. The applicants then filed a second application, and without any showing of a change in circumstances, either with regard to the applicants, their proposed location, or the ordinance, the Alcoholic Beverage Commission held the ordinance invalid and unreasonable. This posi-

tion was also sustained by the trial court. We believe that the following statement fairly summarizes the pertinent facts in this record.

The Poseys have been operating a retail liquor store at 1639 Rossville Avenue in Chattanooga, Tennessee, since 1970. In 1971 Rossville Avenue was bisected and blocked by construction in a railroad relocation project and vehicular traffic on Rossville Avenue decreased noticeably. As a consequence, the Poseys sought to relocate their liquor store and settled upon the Hixson Pike location, which is in a general commercial area in the northern part of the City.

In May 1971, the Poseys filed an application with the City for a certificate of good moral character to operate a liquor store at the new location. (Such certificate is a prerequisite to obtaining a license to sell alcoholic beverages). The City Commission refused to grant the certificate on the ground the proposed location for the store was outside the area of the City designated by ordinance for the location of retail liquor stores.[1]

---

1. The basic ordinance regulating and controlling the sale of alcoholic beverages within Chattanooga was passed on November 18, 1947. It was amended on June 10, 1952, to add a location for wholesale sales of liquor; on December 15, 1964, by revising zones in Subsection (a), (1) and (p) and adding a new zone, Subsection (u); on March 19, 1968, by revising the zone in Subsection (e); on May 7, 1968, by adding a new zone in Subsection (v); and on October 6, 1970, by adding a new zone in Subsection (w). The pertinent part of the ordinance now in effect is as follows:

"Sec. 5–79. Number of licenses limited; preference for county residents.

"The number of retail licenses issued and outstanding in the city at any time shall be limited to fifty-four (54), . ."

\*　\*　\*　\*　\*　\*

"Sec. 5–85. Where establishments may be located.

"It shall be unlawful for any person to operate or maintain any wholesale or retail establishment for the sale, storage or distribution of alcoholic beverages in the city except at locations on the following streets and parts of streets:

(a) Market Street, between the Market Street Bridge and the north side of the Interstate Highway on South Market Street.

(b) Broad Street, between First Street and Thirty-Sixth Street.

(c) Main Street, between Chestnut Street and Central Avenue.

(d) Georgia Avenue, between East Fifth Street and Market Street.

(e) Chestnut Street, between First Street and Twentieth Street.

(f) Cherry Street, between Sixth Street and Ninth Street.

(g) Second Street, between Chestnut Street and Market Street.

(h) Third Street, between Chestnut Street and Market Street.

(i) Fourth Street, between Chestnut Street and Cherry Street.

(j) Fifth Street, between Chestnut Street and Market Street.

(k) Sixth Street to Eighth Street, inclusive, between Chestnut Street and Walnut Street.

(l) Ninth Street, between the east side of the Interstate Highway on West Ninth Street to the west side of the railroad overpass on East Ninth Street in the 600 block thereof.

(m) Tenth Street, between Broad Street and King Street.

(n) Eleventh Street, between Broad Street and Palmetto Street.

(o) Carter Street, between Ninth Street and Main Street.

(p) Rossville Avenue, southwardly from East Main Street, thence southwardly along Rossville Boulevard to the north line of the Interstate Highway.

(q) West Thirteenth Street, between Market Street and Broad Street.

(r) West Fourteenth Street, between Market Street and Broad Street.

(s) Fort Street, between Eleventh Street and Main Street (wholesale dealers only).

(t) First Street, from Broad Street westwardly to Pine Street.

(u) Central Avenue, between but including all four corners of East Eleventh Street southwardly to Rossville Boulevard.

(v) Peeples Street, the 1200 block only.

(w) 1600 Block of East Twenty-fifth Street (wholesale only).

"The city auditor shall issue no license for the sale, storage or distribution of alcoholic beverages at any location other than one on the above named streets or parts of streets, and shall issue no license in any case if the proposed location of an establishment is within two hundred (200)

The Poseys then filed suit in the Chancery Court of Hamilton County on March 14, 1972, seeking to have the chancellor order the City to issue them a certificate of good moral character. On motion of the City, the chancellor dismissed the complaint without prejudice on the theory the Poseys had failed to exhaust their administrative remedies pursuant to T.C.A. § 57–121.

The Poseys did not appeal from the Chancellor's ruling, but instead filed a petition with the ABC alleging that the refusal of the City to issue the certificate was wrongful, illegal and arbitrary in that it was based upon an ordinance of the City which, in the words of the petition, "merely arbitrarily designate certain streets in the City where retail liquor stores are permitted, and arbitrarily prohibit them from locating in any other place in the City. The ordinances are totally void of any type of objective regulations or reasonably ascertainable criteria."

After a hearing on the petition, the ABC concluded "the certifying authority of the City of Chattanooga has not acted illegally, wrongfully, or arbitrarily in refusing a certificate of good moral character for a location outside the area specified in its liquor zoning ordinances," and dismissed the petition.

The Poseys sought a review of the action of the ABC by petition for writs of certiorari and supersedeas filed in the Circuit Court for Davidson County. On hearing the petition, that court upheld the action of the ABC.

The Poseys did not appeal from the ruling of the circuit court, but returned to Chattanooga and filed a second petition for a certificate of good moral character. The City again declined to issue the certificate, with the result that the Poseys again petitioned the ABC pursuant to T.C.A. Section 57–121. This time, the ABC held:

"[T]he denial to petitioners of a certificate of good moral character to operate liquor store at a point within a vast commercial area of Chattanooga not containing a single licensed establishment, was so arbitrary, unreasonable and restrictive as to conflict with and frustrate T.C.A. Sec. 57–111, which contemplates the lawful sale of alcoholic beverages . . . "

and granted a certificate of good moral character to the Poseys.

This time, the City filed a petition for certiorari and supersedeas in the Circuit Court of Davidson County. On hearing the petition, that court found "that the ABC could legally conclude that the liquor zone regulations of the City are so arbitrary and oppressive as to be in conflict with the authority of the ABC to grant retail licenses. Therefore the ABC in granting a license to Mr. Posey did not act illegally or arbitrarily." The City's petition then was dismissed.

The primary question on appeal is: Did the ABC act illegally or arbitrarily in granting a certificate of good moral character to the Poseys to operate a liquor store at 4027 Hixson Pike in Chattanooga, Tennessee? To answer this question, it is necessary to determine the authority of the City to regulate the sale of intoxicating liquors within its limits, and the scope of review of the City's actions by the ABC.

At the outset it should be noted that the City conceded in the earliest stage of this action that the Poseys are of good moral character, and that the refusal of the City to grant them a certificate was predicated solely on the fact that the proposed store location is outside the area prescribed by City Ordinance for location of retail liquor stores. On the surface there seems little, if any, relation between a person's good moral character and the location of his business; however, this Court has held on several

feet of a church or school. (Ord. No. 2853, § 13; Ord. No. 4060, § 1; Ord. No. 4061, § 1; Code 1960, § 4–73; Ord. No. 5560, §§ 1, 2, 12–15–64; Ord. No. 5877, § 1, 3–19–68; Ord. No. 5903, § 1, 5–7–68; Ord. No. 6227, § 1, 10–6–70."

occasions that a municipality has the right to refuse to grant a certificate of good moral character if the issuance of such certificate would make it possible for the licensee to violate a valid ordinance regulating the sale of intoxicating liquor within the boundaries of the municipality. *Safier v. Atkins,* 199 Tenn. 574, 288 S.W.2d 441 (1956); *State ex rel. Veal v. Mayor and Aldermen of Dyersburg,* 184 Tenn. 1, 195 S.W.2d 11 (1946); *State ex rel. Major v. Cummings,* 178 Tenn. 378, 158 S.W.2d 713 (1942); *State ex rel. Saperstein v. Bass,* 177 Tenn. 609, 152 S.W.2d 236 (1941).

Where, as in this case, the City relies on its ordinances as justification for denial of a certificate of good moral character, the ordinance is subject to review by the ABC to see if it conflicts with a statute on the same subject matter. *See City of Lakewood v. Tennessee Alcoholic Beverage Commission,* 219 Tenn. 510, 410 S.W.2d 897 (1967).

In the *Lakewood* case *supra,* this court also pointed out that "T.C.A. Sec. 57–101 et seq. presents a comprehensive scheme of legislation regulating the manufacture and sale of alcoholic beverages in the State of Tennessee. . . . Beyond the subject of certificates of good moral character and a degree of reasonable regulation, municipalities are not vested with any administrative or other function so far as licensing of retail liquor outlets is concerned."

And, where the City refuses to issue a certificate of good moral character to an applicant for a license to operate a retail liquor store, the ABC has the authority to override the City where the refusal was "illegal, wrongful or arbitrary" and issue the certificate. T.C.A. § 57–121. See also *City of Lakewood v. Tennessee Alcoholic Beverage Commission, supra; Boyd v. Burmaster,* 193 Tenn. 338, 246 S.W.2d 36 (1952).

No attempt was made in the *Lakewood* opinion, *supra,* to define the areas where the municipality possesses "a degree of reasonable regulation," and, no attempt will be made in this case to definitively define the scope of a municipality's power, except to point out that this court held in *Safier v. Atkins,* 199 Tenn. 574, 288 S.W.2d 441 (1956), that municipalities have the power "to fix the places where intoxicating liquor may be sold and specify the number of such places in accordance with their charter provisions." See also *State ex rel. Major v. Cummings,* 178 Tenn. 378, 158 S.W.2d 713. Any ordinance establishing a permissive zone or area for the sale of intoxicating beverages is necessarily and inherently restrictive. Seldom, if ever, can such an ordinance be passed that does not exclude locations that appear to be as acceptable as those included within the designated area. That is why the manner and extent of regulation of the location and number of retail liquor stores is left to the discretion of the governing body of the city, and why the exercise of that discretion will not be disturbed by a reviewing body in the absence of a showing that the officials have clearly acted arbitrarily and without regard to their duty. See *Safier v. Atkins, supra; State ex rel. Major v. Cummings, supra.* As stated in *State ex rel. Saperstein v. Bass, Mayor, supra* at page 239, and quoted in *State ex rel. Major v. Cummings, supra* at page 713,

"The power to exercise a sound discretion is implicit in the power to regulate. The Board of Commissioners of the City of Chattanooga elected to exercise the power to regulate retailers of liquor by segregating such business to a described area of the city. Those persons whose property was left outside the area in which liquor stores could be licensed have no basis for constitutional complaint that their property was not included within such area. As said by Justice Field in *Crowley v. Christensen,* 137 U.S. 86, 11 S.Ct. 13, 15, 34 L.Ed. 620: 'There is no inherent right in a citizen to thus sell intoxicating liquors by retail. It is not a privilege of a citizen of the state or of as a citizen of the United States. As it is a business attended with danger to the

community, it may, as already said, be entirely prohibited under such conditions as will limit to the utmost its evils. The manner and extent of regulation rest in the discretion of the governing authority.' "

The power of a city to regulate the number and location of liquor stores does not include the power to prohibit the sale of liquor within the corporate limits when the people, by election, have exercised their option and voted to permit the sale of liquor. *City of Lakewood v. Tennessee Alcoholic Beverage Commission, supra.* Nor, as a necessary corollary, can the municipality so restrict the number and location of retail liquor outlets as to have the practical effect of prohibition.

In summary, the governing authority of a municipality has the authority to regulate, by ordinance, the location and number of retail liquor stores within the corporate limits of the city but does not have the power to prohibit the sale of liquor within its corporate limits when the people, by election, have exercised their option and voted to permit the sale of liquor. Where the city relies on its ordinances to deny a certificate of good moral character, the ABC has the power to review the ordinance to see if it is in conflict with a statute on the same subject. It also has the authority to determine if the city has wrongfully or arbitrarily enforced the ordinance against an applicant for a certificate of good moral character. But the ABC does not have the authority generally to substitute a different zone or area in the city for the sale of alcoholic beverages from a zone or area established by city ordinance.

Evidently recognizing this latter limitation on its authority, the ABC in this case undertook to override the City and issue the Poseys a certificate of good moral character for a location outside the area designated by ordinance for the retail sale of alcoholic beverages on the theory that the ordinance "was so severely restrictive as to be in conflict with and frustrate T.C.A. 57–111, which contemplates the lawful sale of alcoholic beverages after the people have approved the same by public referendum." We find no justification in the record for this conclusion or finding by the ABC. Package liquor is easily available to anyone in the trade area of Chattanooga who wants to purchase it. The City ordinance provides for fifty-four (54) liquor stores within the city limits of Chattanooga, and fifty-three (53) are operating. The area set aside for the stores under the ordinance includes the main thoroughfares in central Chattanooga, with many stores being at or near exits from the interstate highways that pass through Chattanooga.

It seems to us that municipal officials are entitled to rely upon the rulings of this Court, and the interpretations of this Court as to the meaning and effect of legislation, and they are entitled to rely upon the rulings of an agency, such as the Alcoholic Beverage Commission, in carrying out their prescribed duties. If the Chattanooga ordinance was reasonable and valid in connection with the first application of the Poseys, then it was certainly valid and reasonable with regard to their second application for a license at the very same location, about one year later.

Instead of finding that the ordinance of the City of Chattanooga is arbitrary and unreasonable, it is our opinion that the actions of the Alcoholic Beverage Commission can only be so characterized. It is our opinion that that body has undertaken to substitute its own judgment for that of the governing officials of the city, in an area where the city has the power to act and has acted by the passage of an ordinance which, with some amendments, has been in force for some twenty-eight years.

We recognize, of course, that significant changes may occur within the boundaries of a municipal corporation so as to make a restrictive ordinance, which was originally reasonable, no longer so. Such changes,

however, ordinarily occur over a period of years. It is our information that the City of Chattanooga has, since these proceedings commenced, annexed substantial adjacent areas, and it may be that the local ordinance should be re-examined in light of these changes of the municipal boundaries. These changes, however, did not occur between the first time the Alcoholic Beverage Commission considered this application and the second time it considered the application.

In our opinion the petition for certiorari filed by the City of Chattanooga should be sustained and the action of the Alcoholic Beverage Commission, granting the certificate of good moral character and a license based thereon, should be set aside.