FILED

05/08/2019

Clerk of the
Appellate Courts

# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
October 4, 2018 Session Heard at Nashville

**BLOUNT COUNTY BOARD OF EDUCATION, ET AL.**

**v.**

**CITY OF MARYVILLE, TENNESSEE, ET AL.**

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Blount County**
No. 2014-053      Telford E. Forgety, Jr., Chancellor

_____

**No. E2017-00047-SC-R11-CV**

_____

This is one of five cases on appeal to this Court regarding the proper distribution of liquor-by-the-drink tax proceeds between a county and a municipality within the county. In each case, the county had not approved the liquor-by-the-drink sales, but the city had approved such sales. The Commissioner of the Tennessee Department of Revenue, who collects taxes on all liquor-by-the-drink sales, distributed tax proceeds to the defendant cities in accordance with the liquor-by-the-drink tax distribution statute, Tennessee Code Annotated section 57-4-306. The statute required the recipient cities to then distribute half of their proceeds "in the same manner as the county property tax for schools is expended and distributed." Tenn. Code. Ann. § 57-4-306(a)(2)(A) (2013). In each case, the recipient city distributed half of its tax proceeds to its own city school system and did not share the proceeds with the county. The counties sued the cities, claiming that the statute required the cities to distribute the tax proceeds as the counties distribute the county property tax for schools, which is pro rata among all schools in the county based on average daily attendance. In the instant case, the trial court granted summary judgment against the county and in favor of the two defendant cities. The county also raised an alternative claim for reimbursement of past liquor-by-the-drink tax proceeds that it had received from private club sales and shared with the cities; the county argued that, if cities were not required to share their tax proceeds, then counties should not be required to do so. The trial court rejected this claim as well and held that the statute required counties to distribute their liquor-by-the-drink tax proceeds pro rata among all schools in the county, even though it did not require the same of cities. The Court of Appeals affirmed. Discerning no error, we affirm.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the
Trial Court and the Court of Appeals Affirmed**

HOLLY KIRBY, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, SHARON G. LEE, and ROGER A. PAGE, JJ., joined.

Robert N. Goddard, Maryville, Tennessee, for the appellant, Blount County Board of Education; and Craig L Garrett, Maryville, Tennessee, for the appellant, Blount County, Tennessee.

Shelley L. Wilson, Stephanie D. Coleman, and Sarah D. Jarrard, Knoxville, Tennessee, for the appellees, City of Maryville and City of Alcoa; and Melanie E. Davis, Maryville, Tennessee, for the appellee, City of Maryville.

**OPINION[1]**

The issues in this case are better understood with some knowledge of the development of the pertinent liquor-by-the-drink statutes. Consequently, we offer some background on the history of the statutes before we outline the facts and analyze the issues.

**The Liquor-By-The-Drink Act**

During the years of federal prohibition (1920–1933), Tennessee had "bone dry" laws, which criminalized the sale, purchase, receipt, possession, transport, and manufacture of alcoholic beverages. *City of Chattanooga v. Tenn. Alcoholic Beverage Comm'n*, 525 S.W.2d 470, 472 (Tenn. 1975); Tenn. Op. Att'y Gen. 79-215 (May 3, 1979). After prohibition ended, Tennessee enacted a "local option" law authorizing counties to hold county-wide local option elections on whether to allow off-premises (package) sales of alcoholic beverages within their borders. *City of Chattanooga*, 525 S.W.2d at 472; *Chadrick v. State*, 137 S.W.2d 284, 285 (Tenn. 1940); *see also Templeton v. Metro. Gov't of Nashville & Davidson Cnty.*, 650 S.W.2d 743, 754 (Tenn. Ct. App. 1983). "The 'bone dry law' continued in effect in counties not electing to come under the provisions of the local option law." *City of Chattanooga*, 525 S.W.2d at 472; *see also Renfro v. State*, 144 S.W.2d 793, 794 (Tenn. 1940).

_____

[1] This appeal was consolidated with four other cases for oral argument only, as we will discuss in more detail below.

- 2 -

In 1967, the Legislature passed comprehensive legislation related to liquor sales for on-premises consumption, i.e., liquor by the drink (hereinafter "LBD"). We refer to this as "the LBD Act." The LBD Act "authorize[s] the sale of intoxicating liquors by the drink for consumption on the premises, impose[s] taxes upon such sales[,] and provide[s] for the collection thereof." *Aetna Cas. & Sur. Co. v. Woods*, 565 S.W.2d 861, 865 (Tenn. 1978). Initially, the LBD Act allowed only the largest counties to hold local option elections. *See* Tenn. Code Ann. § 57-164 (1968). Gradually, in increments, the Act was amended to allow all counties—as well as all municipalities—to approve LBD sales by local option election. *See* 1987 Tenn. Pub. Acts, ch. 456 § 2; 1992 Tenn. Pub. Acts, ch. 711 § 1.

In any jurisdiction that approves LBD sales, such sales can lawfully be made by the establishments enumerated in the statutes, including restaurants, hotels, and sports facilities. *See* Tenn. Code Ann. § 57-4-101 (2013). Private clubs are among the enumerated establishments, but they are also permitted to sell LBD even in counties or municipalities that have not adopted LBD.[2]

Tennessee Code Annotated section 57-4-301(c) levies a 15% tax on all LBD sales.[3] Tenn. Code Ann. § 57-4-301(c) (2013). We refer to this as "the LBD tax." Retailers collect the LBD tax from consumers and then forward the tax proceeds to the Commissioner of the Tennessee Department of Revenue ("Commissioner"). *See* Tenn.

---

[2] This has been the case since at least 1972. Tennessee Code Annotated section 57-4-101(a)(2) authorizes private club sales "subject to the further provisions of [Chapter 4] *other than § 57-4-103*" (which makes Chapter 4 applicable to jurisdictions that have voted for LBD sales by referendum). Tenn. Code Ann. § 57-4-101(a)(2) (2013) (emphasis added). The italicized proviso has been interpreted to allow clubs to "legally sell alcoholic beverages by the drink throughout the state, whether or not the area in which such facilities are located are 'wet' or 'dry' for other purposes." Tenn. Op. Att'y Gen. 79-215 (May 3, 1979). The parties in this case do not dispute that private clubs may sell LBD regardless of whether the jurisdiction in which they are located has approved such sales.

[3] That subsection provides:

> (c) In addition to the privilege taxes levied in subdivision (b)(1), there is further levied a tax equal to the rate of fifteen percent (15%) of the sales price of all alcoholic beverages sold for consumption on the premises, the tax to be computed on the gross sales of alcoholic beverages for consumption on the premises for the purpose of remitting the tax due the state, and to include each and every retail thereof.

Tenn. Code Ann. § 57-4-301(c) (2013 & 2018).

Code Ann. § 57-4-302 (2013 & 2018). The Commissioner then distributes the LBD tax proceeds in accordance with the statute at issue in this case, Tennessee Code Annotated section 57-4-306. We refer to this as "the distribution statute."

This case involves the application of the distribution statute as it existed prior to the enactment of a July 2014 amendment.[4] The relevant versions of the distribution statute required the Commissioner to distribute 50% of all LBD tax proceeds to Tennessee's "general fund to be earmarked for education purposes." Tenn. Code Ann. § 57-4-306(a)(1). The Commissioner was directed to distribute the remaining 50% of the tax proceeds back "to the local political subdivision" that generated the proceeds. *Id.* § 57-4-306(a)(2).

Important to this appeal, the remaining provisions of the distribution statute described what was to be done with the tax proceeds sent back to the originating local political subdivision. The distribution statute said that half of those proceeds would go to the general fund of the county, city, or town in which the taxes were generated. *Id.* § 57-4-306(a)(2)(B). The other half, the distribution statute stated, "shall be expended and distributed in the same manner as the county property tax for schools is expended and distributed." *Id.* § 57-4-306(a)(2)(A). Interpretation of this provision is the issue presented to us in this case.

### Blount County

The underlying facts in this case are essentially undisputed. The Cities of Alcoa and Maryville (collectively, "the Cities") are located in Blount County. The Cities have at all relevant times had their own municipal school systems separate from the Blount County school system.

In 1996, citizens of Maryville passed a referendum authorizing LBD sales within its city limits. In 2004, citizens of Alcoa did the same. Blount County has never approved LBD sales.

---

[4] The distribution statute was amended substantially effective July 1, 2014, after the five lawsuits herein were filed. *See* 2014 Tenn. Pub. Acts, ch. 901 § 1 (H.B. 1403). Unless otherwise specified, references to the distribution statute are to the version in the 2013 volume of the Tennessee Code Annotated, which sets forth the statute as it existed at the time these lawsuits were filed and before the July 2014 amendment.

Prior to the referendums, both of the Cities had received LBD tax proceeds from lawful LBD sales at private clubs within their respective city limits. After the Cities approved LBD sales by referendum, the Cities received LBD tax proceeds from both private club sales and sales at other establishments within their corporate limits. The Cities have never distributed any of their LBD tax proceeds to the County school system or to any other school system in the County.

Because it never approved LBD sales, the County has received LBD tax proceeds *only* from lawful LBD sales in private clubs located in unincorporated areas of the County. Unlike the Cities, the County distributed half of its tax proceeds among all of the school systems in the County—just as it distributes County property taxes for schools—pro rata to all local education agencies in the County in accordance with average daily attendance maintained by each. *See* Tenn. Code Ann. § 49-3-315(a) (2013).

On May 23, 2014, the Blount County Board of Education ("the Board") filed this lawsuit against the Cities, seeking a declaratory judgment as to the rights and obligations of the parties concerning LBD tax proceeds. The Board also requested damages from the Cities for its alleged pro rata share of LBD tax proceeds distributed to the Cities "at least back to 1980 for the City of Alcoa, and back to 1996 for the City of Maryville."[5] The Board asserted that the distribution statute required the Commissioner to distribute half of local political subdivision's share of the tax proceeds directly "to the Blount County Trustee to be distributed in the same manner as the county property tax for schools is expended and distributed."[6] It claimed that this was necessary "to insure that students across the county are not discriminated against in terms of funding of their education based on their residence within or without the incorporated municipalities." Because the Commissioner had erroneously paid this portion of the proceeds directly to the Cities, the Board argued, the Cities should be required to remit those funds to the Blount County Board of Education.

---

[5] The Board sought $284,601 from Alcoa and $503,212 from Maryville.

[6] Although the Board challenged *the manner* of the Commissioner's distribution under the local education provision, it did not challenge *the amount* of the distribution made to the local political subdivisions. Furthermore, the Commissioner was not included as a defendant in the lawsuit. Therefore, we need not address the propriety of the distribution amount made by the Commissioner to the local political subdivisions in this case.

- 5 -

The Cities each filed a separate answer. Both argued that the distribution statute does not require the Cities to remit any portion of their LBD tax proceeds to the Board, to Blount County, or to any other local school system.

In November 2014, the Board filed a motion to amend the complaint to add Blount County as a plaintiff. The Cities objected to the addition of Blount County and filed a motion to dismiss the complaint. In June 2015, the trial court entered an order denying the Cities' motion to dismiss and granting the Board's motion to add Blount County as a plaintiff. As a result, we hereinafter refer to the Blount County Board of Education and Blount County collectively as "the County."

In August 2015, the County filed a second motion to amend, this one to add an alternative claim for relief. The County asserted that, if the trial court ruled in favor of the Cities on the County's original claim and determined that the Cities were not required to share their LBD tax proceeds pro rata, then the County should be entitled to reimbursement of LBD tax proceeds (from LBD sales at private clubs in the County) that it had shared pro rata with the Cities between November 1992 and August 2014.[7] The trial court granted the motion to amend.

After that, the parties filed cross-motions for summary judgment on the County's primary claim against the Cities.[8] In December 2015, the trial court entered an order granting summary judgment in favor of the Cities and dismissing the County's amended complaint. Explaining its reasoning, the trial court noted that the distribution statute contains a provision that specifically requires municipalities that *do not* operate their own school system to remit the education portion of the LBD tax proceeds to the county school fund. Applying the maxim *expressio unius est exclusio alterius* (the expression of one thing implies the exclusion of all things not expressly mentioned) to interpret the distribution statute, the trial court determined that municipalities that *do* operate their own school system are *not* required to remit any tax proceeds to the county school fund; rather, they are directed to keep the education portion of the LBD tax proceeds for their own school system. The trial court further found the distribution statute to be ambiguous, and it held that consideration of the statute's history and purpose led to the same

---

[7] As to this alternative claim, the County argued that Maryville owed the County $270,572.75 and Alcoa owed $90,602.12.

[8] The County's motion was actually for partial summary judgment based on liability only, not damages, and it did not encompass the County's alternative claim for relief.

conclusion. Under this construction of the statute, the trial court dismissed the County's primary claim.[9]

Subsequent motions for summary judgment raised the question of the County's alternative request for relief in which the County asserted that, if the trial court ruled in favor of the City on the primary issue, the County was entitled to reimbursement of LBD tax proceeds on private club LBD sales that it had shared pro rata with the Cities. The trial court entered an order rejecting the County's alternative claim, granting summary judgment in favor of the Cities, and dismissing the County's lawsuit in its entirety. The trial court allowed that the distribution statute "is not a model of clarity," but it interpreted the statute to require the County to distribute its LBD tax proceeds to all schools in the County pro rata in the same way that it distributes the County property tax for schools. The County filed a timely appeal from the trial court's decision.

Around the same time, three other cases involving the same issue regarding the distribution statute were appealed to the Court of Appeals for the Eastern Section. *See Bradley Cnty. Sch. Sys. ex rel. Bradley Cnty. Bd. of Educ. v. City of Cleveland*, No. E2016-01030-COA-R3-CV, 2017 WL 6598557 (Tenn. Ct. App. Dec. 27, 2017) ("*Bradley Cnty.*"); *Sullivan Cnty. v. City of Bristol*, No. E2016-02109-COA-R3-CV, 2017 WL 6598559 (Tenn. Ct. App. Dec. 27, 2017); *Washington Cnty. Sch. Sys. ex rel. Washington Cnty. Bd. of Educ. v. City of Johnson City*, No. E2016-02583-COA-R9-CV, 2017 WL 6603656 (Tenn. Ct. App. Dec. 27, 2017) ("*Washington Cnty.*"). A motion to consolidate was filed, and the Court of Appeals for the Eastern Section entered an order "granting the motion 'only to the extent that these cases shall be set for oral argument on the same docket and on the same day.'" *Blount Cnty. Bd. of Educ. v. City of Maryville*, No. E2017-00047-COA-R3-CV, 2017 WL 6606855, at *3 (Tenn. Ct. App. May 26, 2017) ("*Blount Cnty.*") (quoting order). Pursuant to the order, the intermediate appellate court held arguments in this case and in the three other cases on the same day before the same panel of judges.

On December 27, 2017, the Eastern Section panel of the Court of Appeals contemporaneously issued separate decisions in all four cases, including this one, holding in favor of the city defendants.[10] *See Blount Cnty.*, 2017 WL 6606855, at *21; *see also*

---

[9] The trial court also dismissed the County's alternative claim in its December 2015 order, but the court recognized that the ruling was premature because the County's first motion for summary judgment did not encompass that claim.

*Bradley Cnty.*, 2017 WL 6598557, at *17; *Sullivan Cnty.*, 2017 WL 6598559, at *17; *Washington Cnty.*, 2017 WL 6603656, at *17. The appellate court first determined that the distribution statute was ambiguous regarding whether cities that operate their own school systems were required to remit a portion of their LBD tax proceeds to their counties when the counties had not approved LBD sales by referendum. *See Blount Cnty.*, 2017 WL 6606855, at *9; *see also Bradley Cnty.*, 2017 WL 6598557, at *8; *Sullivan Cnty.*, 2017 WL 6598559, at *8; *Washington Cnty.*, 2017 WL 6603656, at *10. After considering the statutory framework, legislative history, and other sources, the Eastern Section panel held that the distribution statute directed the cities to expend and distribute half of their LBD tax proceeds in the manner in which the county property taxes would be expended and distributed *within the cities*, that is, for the benefit of the cities' own school systems. *See Blount Cnty.*, 2017 WL 6606855, at *21; *see also Bradley Cnty.*, 2017 WL 6598557, at *17; *Sullivan Cnty.*, 2017 WL 6598559, at *17; *Washington Cnty.*, 2017 WL 6603656, at *17. As to the County's alternative claim in the instant case, the Eastern Section panel held that the plain language of the distribution statute regarding LBD tax proceeds paid "to a county was unambiguous. The County is not entitled to relief on this issue." *Blount Cnty.*, 2017 WL 6606855, at *21.

About a month later, on January 23, 2018, the Court of Appeals for the Middle Section reached the opposite conclusion in a factually similar case. *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, No. M2017-00935-COA-R3-CV, 2018 WL 522423, at *4 (Tenn. Ct. App. Jan. 23, 2018). In *Coffee County*, the Middle Section panel acknowledged the four decisions issued by the Eastern Section panel but disagreed with the analysis in those decisions. *Id.* at *3-4 (noting that it did "not disagree with [its] learned cohorts lightly"). Rather, the Middle Section panel deemed the distribution statute unambiguous and held that, on its face, the statute plainly required municipalities to distribute the tax proceeds in the same manner as the counties distribute county property taxes for schools. The Middle Section declined to consider anything outside the text of the specific provision. *Id.* at *3.

We granted permission to appeal in this case and in the four similar cases arising out of both the Eastern and Middle Sections of the Court of Appeals to resolve the split among the appellate courts on the proper interpretation of the distribution statute.[11]

---

[10] The decisions were all issued by the same appellate panel, and the legal analysis is substantively identical in each opinion.

STANDARD OF REVIEW

We review a trial court's ruling on a motion for summary judgment de novo without a presumption of correctness in the lower court's decision. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *Rye*, 477 S.W.3d at 250.

As we have indicated, the relevant facts in the instant appeal are undisputed, and the issues involve only the interpretation of statutes. Issues of statutory interpretation are questions of law, which are also reviewed de novo without a presumption of correctness. *Beard v. Branson*, 528 S.W.3d 487, 494-95 (Tenn. 2017) (quoting *Kiser v. Wolfe*, 353 S.W.3d 741, 745 (Tenn. 2011)); *Circle C Constr., LLC v. Nilsen*, 484 S.W.3d 914, 917 (Tenn. 2016).

## ANALYSIS

The primary issue on appeal involves interpretation of the distribution statute as it existed when this lawsuit was filed in May 2014.[12] At that time, the statute read:

> (a) All gross receipt taxes collected under § 57-4-301(c) shall be distributed by the commissioner as follows:
>
> > (1) Fifty percent (50%) to the general fund to be earmarked for education purposes; and

---

[11] This case was consolidated with the other four cases for oral argument only. This opinion resolves only the dispute between Blount County and the Cities of Maryville and Alcoa. Separate opinions are being issued in each of the other four cases.

[12] As noted above in footnote 4, the distribution statute was amended substantially in July 2014, after this lawsuit was filed. *See* 2014 Tenn. Pub. Acts, ch. 901 § 1 (H.B. 1403). As explained in *Coffee County*, however, we need not delve into the particulars of the amendment because it does not apply in this case and it does not inform our interpretation of the pre-July 2014 versions of the statute. *See Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, No. M2017-00935-SC-R11-CV, slip op. at 22 n.28 (Tenn. May 8, 2019).

*(2) Fifty percent (50%) to the local political subdivision as follows:*

*(A) One half (1/2) of the proceeds shall be expended and distributed in the same manner as the county property tax for schools is expended and distributed*; provided, however, that except in [Bedford County][13] any proceeds expended and distributed to municipalities which do not operate their own school systems separate from the county are required to remit one half (½) of their proceeds of the gross receipts liquor-by-the-drink tax to the county school fund; and

*(B) The other one half (1/2) shall be distributed as follows:*

*(i) Collections of gross receipts collected in unincorporated areas, to the county general fund; and*

*(ii) Collections of gross receipts in incorporated cities and towns, to the city or town wherein such tax is collected.*

Tenn. Code Ann. § 57-4-306(a)(1)-(2) (2013) (emphasis added). The italicized portion of the statute, which we call "the local education provision," is the specific provision in dispute in this case. The question is whether municipalities with their own school systems were required to expend and distribute their LBD tax proceeds with other schools in the county pro rata, that is, "in the same manner as the county property tax for schools is expended and distributed" by the county. *Id.* § 57-4-306(a)(2)(A) (2013).

We examined the proper interpretation of the distribution statute at length in *Coffee County*, the case arising out of the Middle Section Court of Appeals and released on the same date as this opinion. *See Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, No. M2017-00935-SC-R11-CV, slip op. at 22 (Tenn. May 8, 2019) (hereinafter "*Coffee Cnty.*"). After fulsome analysis, we concluded in *Coffee County* that the local education provision in the distribution statute "required a municipality with its own school system

_____

[13] It is undisputed that the statutory language omitted and replaced by the bracketed language describes the population parameters of Bedford County.

to expend and distribute half of its LBD tax proceeds in the same manner as the county property tax for schools is expended and distributed within the municipality, which is for the benefit of the municipality's own school system." *Id.* at 22. In that case, because the City of Tullahoma had its own school system, we held that the city "was not required to share its LBD tax proceeds with the [c]ounty" during the relevant time period. *Id.* at 22.

The primary issue in the instant case is substantively indistinguishable from the issue decided in *Coffee County*.[14] Based on our holding in *Coffee County*, we hold that the distribution statute did not require the Commissioner to pay half of the Cities' LBD tax proceeds directly to the County trustee, and that the Cities were not required to distribute half of their LBD tax proceeds pro rata among the County school system and the other school systems in the County. Rather, the local education provision directed the Cities to expend and distribute the education portion of their LBD tax proceeds in support of their own municipal school systems. For this reason, we affirm the grant of summary judgment in favor of the Cities on this claim.

We also conclude that the County is not entitled to relief on its alternative argument. As we have explained, the County argues that, if this Court concludes that the Cities were not required to share their LBD tax proceeds under the distribution statute, then it must also conclude that the County was not required to share its LBD tax proceeds (from LBD sales at private clubs) with the Cities. It argues: "The Cities cannot take one position on the interpretation of the statute when it benefits them and take another position on the interpretation of the statute when it does not benefit them." Based on this rationale, the County argues, it is entitled to a refund from the Cities for all LBD tax proceeds it shared with the Cites up until this lawsuit was filed.

We cannot agree. The County's alternative argument is inconsistent with our interpretation of the distribution statute in *Coffee County*. In that opinion, we interpreted the distribution statute to mean that half of all LBD tax proceeds paid to a city must be expended in the same manner as the county property tax for schools is expended *within the city*. *Id.* at 22. The same would apply to LBD tax proceeds received by a county. In other words, a county that receives LBD tax proceeds from private club LBD sales must

---

[14] Blount County takes a slightly different tack than that of Coffee County and the counties in the other four cases on appeal. Blount County argues that the distribution statute required *the Commissioner* to remit half of the Cities' tax proceeds *directly to the county trustee* for pro rata distribution, while the counties in the other cases argued that the cities were required to redistribute the LBD tax proceeds to other local schools pro rata after the cities received the proceeds from the Commissioner. We note this difference in the framing of the argument but conclude that our analysis in *Coffee County* nevertheless applies and resolves the issue the same way, which is in favor of the Cities.

expend and distribute half of their LBD tax proceeds "in the same manner as the county property tax for schools is expended and distributed" *by the county*, which is pro rata among all of the local school systems in the county. *Id.* at 22 (quoting Tenn. Code Ann. § 57-4-306(a)(2)(A)). Thus, the distribution statute required the County to distribute its LBD tax proceeds pro rata among the local school systems, even though it did not require the Cities to do the same. As the trial court below recognized, this disparity is understandable because "the citizens of [the Cities] are necessarily also citizens of [the County]. But the reverse is not true at all. [The] citizens of [the County] that live outside [the Cities] are not citizens of [the Cities]." This decision was within the Legislature's prerogative to make.[15] Therefore, we affirm the grant of summary judgment in favor of the Cities on the County's alternative claim for relief.

Accordingly, we affirm the grant of summary judgment in favor of the Cities on the County's primary claim for a share of the Cities' LBD tax proceeds and also on its alternative claim for reimbursement of LBD tax proceeds. All other issues raised on appeal and not specifically addressed herein are pretermitted by our decision.

## CONCLUSION

The decisions of the trial court and the Court of Appeals are affirmed. Costs on appeal are to be taxed to the Appellants Blount County Board of Education and Blount County and their sureties, for which execution may issue, if necessary.

_____
HOLLY KIRBY, JUSTICE

---

[15] As we noted in *Coffee County*, our interpretation of the distribution statute cannot be based on the perceived "fairness" of that statute. *Coffee Cnty.* slip op. at 22-23 n.29. Any "argument concerning perceived fairness of the tax distribution scheme provided by the statute would properly be directed to the General Assembly rather than to this Court." *Blount Cnty.*, 2017 WL 6606855, at *18; *see also Bradley Cnty.*, 2017 WL 6598557, at *16; *Sullivan Cnty.*, 2017 WL 6598559, at *17; *Washington Cnty.*, 2017 WL 6603656, at *17.