IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
October 4, 2018 Session Heard at Nashville

**BRADLEY COUNTY SCHOOL SYSTEM, ET AL.**
**v.**
**THE CITY OF CLEVELAND, TENNESSEE**

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Bradley County**
**No. 2014-CV-84     Jerri S. Bryant, Chancellor**

———————————————————————

**No. E2016-01030-SC-R11-CV**

———————————————————————

This is one of five cases on appeal to this Court regarding the proper distribution of liquor-by-the-drink tax proceeds between a county and a municipality within the county. In each case, the county had not approved the liquor-by-the-drink sales, but the city had approved such sales. The Commissioner of the Tennessee Department of Revenue, who collects taxes on all liquor-by-the-drink sales, distributed tax proceeds to the defendant cities in accordance with the liquor-by-the-drink tax distribution statute, Tennessee Code Annotated section 57-4-306. The statute required the recipient cities to then distribute half of their proceeds "in the same manner as the county property tax for schools is expended and distributed." Tenn. Code. Ann. § 57-4-306(a)(2)(A) (2013). In each case, the recipient city distributed half of its tax proceeds to its own city school system and did not share the proceeds with the county. The counties sued the cities, claiming that the statute required the cities to distribute the tax proceeds as the counties distribute the county property tax for schools, which is pro rata among all schools in the county based on average daily attendance. In the instant case, the trial court granted summary judgment in favor of the city. The Court of Appeals affirmed, concluding that the distribution statute was ambiguous and that the statutory framework, legislative history, and other sources supported the trial court's interpretation of the statute. We affirm.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the**
**Trial Court and the Court of Appeals Affirmed**

HOLLY KIRBY, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK, SHARON G. LEE, and ROGER A. PAGE, JJ., joined.

James F. Logan, Jr., Cleveland, Tennessee, for the appellants, Bradley School System, by and through the Bradley County Board of Education, and Bradley County, Tennessee.

Douglas S. Johnston, Jr., Nashville, Tennessee, for the appellee, City of Cleveland, Tennessee.

Kristin Ellis Berexa and Mark E. McGrady, Nashville, Tennessee, for amicus curiae, Municipal League Risk Management Pool, Inc.

# OPINION[1]

The issues in this case are better understood with some knowledge of the development of the pertinent liquor-by-the-drink statutes. Consequently, we offer some background on the history of the statutes before we outline the facts and analyze the issues.

## The Liquor-By-The-Drink Act

During the years of federal prohibition (1920–1933), Tennessee had "bone dry" laws, which criminalized the sale, purchase, receipt, possession, transport, and manufacture of alcoholic beverages. *City of Chattanooga v. Tenn. Alcoholic Beverage Comm'n*, 525 S.W.2d 470, 472 (Tenn. 1975); Tenn. Op. Att'y Gen. 79-215 (May 3, 1979). After prohibition ended, Tennessee enacted a "local option" law authorizing counties to hold county-wide local option elections on whether to allow off-premises (package) sales of alcoholic beverages within their borders. *City of Chattanooga*, 525 S.W.2d at 472; *Chadrick v. State*, 137 S.W.2d 284, 285 (Tenn. 1940); *see also Templeton v. Metro. Gov't of Nashville & Davidson Cnty.*, 650 S.W.2d 743, 754 (Tenn. Ct. App. 1983). "The 'bone dry law' continued in effect in counties not electing to come under the provisions of the local option law." *City of Chattanooga*, 525 S.W.2d at 472; *see also Renfro v. State*, 144 S.W.2d 793, 794 (Tenn. 1940).

In 1967, the Legislature passed comprehensive legislation related to liquor sales for on-premises consumption, i.e., liquor by the drink (hereinafter "LBD"). We refer to this as "the LBD Act." The LBD Act "authorize[s] the sale of intoxicating liquors by the

---

[1] This appeal was consolidated with four other cases for oral argument only, as we will discuss in more detail below.

drink for consumption on the premises, impose[s] taxes upon such sales[,] and provide[s] for the collection thereof." *Aetna Cas. & Sur. Co. v. Woods*, 565 S.W.2d 861, 865 (Tenn. 1978). Initially, the LBD Act allowed only the largest counties to hold local option elections. *See* Tenn. Code Ann. § 57-164 (1968). Gradually, in increments, the Act was amended to allow all counties—as well as all municipalities—to approve LBD sales by local option election. *See* 1987 Tenn. Pub. Acts, ch. 456 § 2; 1992 Tenn. Pub. Acts, ch. 711 § 1.

In any jurisdiction that approves LBD sales, such sales can lawfully be made by the establishments enumerated in the statutes, including restaurants, hotels, and sports facilities. *See* Tenn. Code Ann. § 57-4-101 (2013). Private clubs are among the enumerated establishments, but they are also permitted to sell LBD even in counties or municipalities that have not adopted LBD.[2]

Tennessee Code Annotated section 57-4-301(c) levies a 15% tax on all LBD sales.[3] Tenn. Code Ann. § 57-4-301(c) (2013). We refer to this as "the LBD tax." Retailers collect the LBD tax from consumers and then forward the tax proceeds to the Commissioner of the Tennessee Department of Revenue ("Commissioner"). *See* Tenn. Code Ann. § 57-4-302 (2013 & 2018). The Commissioner then distributes the LBD tax proceeds in accordance with the statute at issue in this case, Tennessee Code Annotated section 57-4-306. We refer to this as "the distribution statute."

---

[2] This has been the case since at least 1972. Tennessee Code Annotated section 57-4-101(a)(2) authorizes private club sales "subject to the further provisions of [Chapter 4] *other than § 57-4-103*" (which makes Chapter 4 applicable to jurisdictions that have voted for LBD sales by referendum). Tenn. Code Ann. § 57-4-101(a)(2) (2013) (emphasis added). The italicized proviso has been interpreted to allow clubs to "legally sell alcoholic beverages by the drink throughout the state, whether or not the area in which such facilities are located are 'wet' or 'dry' for other purposes." Tenn. Op. Att'y Gen. 79-215 (May 3, 1979). The parties in this case do not dispute that private clubs may sell LBD regardless of whether the jurisdiction in which they are located has approved such sales.

[3] That subsection provides:

(c) In addition to the privilege taxes levied in subdivision (b)(1), there is further levied a tax equal to the rate of fifteen percent (15%) of the sales price of all alcoholic beverages sold for consumption on the premises, the tax to be computed on the gross sales of alcoholic beverages for consumption on the premises for the purpose of remitting the tax due the state, and to include each and every retail thereof.

Tenn. Code Ann. § 57-4-301(c) (2013 & 2018).

This case involves the application of the distribution statute as it existed prior to the enactment of a July 2014 amendment.[4] The relevant versions of the distribution statute required the Commissioner to distribute 50% of all LBD tax proceeds to Tennessee's "general fund to be earmarked for education purposes." Tenn. Code Ann. § 57-4-306(a)(1). The Commissioner was directed to distribute the remaining 50% of the tax proceeds back "to the local political subdivision" that generated the proceeds. *Id.* § 57-4-306(a)(2).

Important to this appeal, the remaining provisions of the distribution statute described what was to be done with the tax proceeds sent back to the originating local political subdivision. The distribution statute said that half of those proceeds would go to the general fund of the county, city, or town in which the taxes were generated. *Id.* § 57-4-306(a)(2)(B). The other half, the distribution statute stated, "shall be expended and distributed in the same manner as the county property tax for schools is expended and distributed." *Id.* § 57-4-306(a)(2)(A). Interpretation of this provision is the issue presented to us in this case.

### Bradley County

The underlying facts in this case are essentially undisputed. The City of Cleveland ("the City") is located in Bradley County. The City has at all relevant times had its own municipal school system separate from the Bradley County school system.

In 2002, citizens of the City passed a referendum authorizing LBD sales within City limits. The citizens of Bradley County rejected a similar referendum.

Prior to the 2002 City referendum, the City had received LBD tax revenues from lawful alcohol sales at private clubs within its corporate limits. After the referendum, the City received LBD tax revenues from LBD sales at private clubs as well as other approved establishments within its corporate limits. The City never distributed any of its LBD tax proceeds to either Bradley County or the Bradley County School System.

---

[4] The distribution statute was amended substantially effective July 1, 2014, after the five lawsuits herein were filed. *See* 2014 Tenn. Pub. Acts, ch. 901 § 1 (H.B. 1403). Unless otherwise specified, references to the distribution statute are to the version in the 2013 volume of the Tennessee Code Annotated, which sets forth the statute as it existed at the time these lawsuits were filed and before the July 2014 amendment.

On April 14, 2014, the Bradley County School System, by and through the Bradley County Board of Education, filed a lawsuit against the City in the trial court below. The plaintiff sought, among other things, a declaratory judgment as to the rights and obligations of the parties under the LBD Act and damages for past LBD tax proceeds allegedly due under the Act "from the date of inception of the statute."[5] The trial court later permitted Bradley County to participate in the case as an intervening plaintiff. Hereinafter, we refer to the Bradley County School System and Bradley County collectively as "the County."

In May 2014, the City filed a motion to dismiss the complaint for failure to state a claim. It argued that the LBD Act was inapplicable to the County and, by extension, to the Bradley County School Board, based on Tennessee Code Annotated section 57-4-103(a). Tenn. Code Ann. § 57-4-103(a) (2013) ("This chapter shall be effective in any jurisdiction which authorizes the sale of alcoholic beverages for consumption on the premises in a referendum in the manner prescribed by § 57-3-106 . . . ."). After a hearing, the trial court denied the City's motion to dismiss.[6]

Subsequently, the parties filed cross-motions for summary judgment. In July 2015, the trial court entered an order granting summary judgment in favor of the City. The trial court noted that, under Tennessee Code Annotated section 57-4-103(a), the distribution provision applied only to local political subdivisions that had authorized LBD sales by referendum. Because the County had rejected a referendum authorizing LBD sales, the trial court reasoned, it "has neither rights nor responsibilities under" the LBD Act.[7]

The County filed a motion to alter or amend arguing, among other things, that the trial court had misinterpreted the LBD Act by overlooking the fact that the distribution

---

[5] The plaintiff did not seek a specific amount in damages. It asked instead that the City be required "to pay over unto the Bradley County School System that sum which is due under the statute . . . together with prejudgment interest."

[6] The case was consolidated for purposes of argument with *McMinn County Board of Education v. City of Athens*, No. 2014-CV-173. After the motion to dismiss was denied, the *McMinn County* case and the instant case proceeded separately, and the *McMinn County* case is not at issue here.

[7] The trial court noted that its conclusion was consistent with the 1980s opinions of the Attorney General discussed in *Coffee County Board of Education v. City of Tullahoma,* No. M2017-00935-SC-R11-CV, slip op. at 15-16 (Tenn. May 8, 2019). The court rejected the argument that the July 2014 amendment to the distribution statute demonstrated the Legislature's original intent to require municipalities to share LBD tax proceeds with other schools in the county pro rata.

statute applied to private club LBD sales regardless of whether the local political subdivision had adopted LBD by referendum. The trial court denied the County's motion in part, reserving judgment on the question of whether private club LBD tax proceeds received by the City prior to the 2002 referendum should have been shared with the County.

After further briefing, the trial court granted summary judgment to the City *in toto* and denied the County's motion to alter or amend. The trial court explained that it had "been provided no authority stating that pre-referendum taxes collected from private clubs should be allocated differently." Accordingly, the trial court entered a final order granting summary judgment in favor of the City and dismissing the complaint. The County filed a timely appeal from the trial court's decision.

Around the same time, three other cases involving the same issue regarding the distribution statute were appealed to the Court of Appeals for the Eastern Section. *See Blount Cnty. Bd. of Educ. v. City of Maryville*, No. E2017-00047-COA-R3-CV, 2017 WL 6606855 (Tenn. Ct. App. May 26, 2017) ("*Blount Cnty.*"); *Sullivan Cnty. v. City of Bristol*, No. E2016-02109-COA-R3-CV, 2017 WL 6598559 (Tenn. Ct. App. Dec. 27, 2017); *Washington Cnty. Sch. Sys. ex rel. Washington Cnty. Bd. of Educ. v. City of Johnson City*, No. E2016-02583-COA-R9-CV, 2017 WL 6603656 (Tenn. Ct. App. Dec. 27, 2017) ("*Washington Cnty.*"). The County in the instant case filed a motion to consolidate the four cases, and the Court of Appeals for the Eastern Section entered an order "granting the motion 'only to the extent that these cases shall be set for oral argument on the same docket and on the same day.'" *Bradley Cnty. Sch. Sys. ex rel. Bradley Cnty. Bd. of Educ. v. City of Cleveland*, No. E2016-01030-COA-R3-CV, 2017 WL 6598557, at *3 (Tenn. Ct. App. Dec. 27, 2017) ("*Bradley Cnty.*") (quoting order). Pursuant to the order, the intermediate appellate court held arguments in this case and in the three other cases on the same day before the same panel of judges.

On December 27, 2017, the Eastern Section panel of the Court of Appeals contemporaneously issued separate decisions in all four cases, including this one, holding in favor of the city defendants.[8] *See Bradley Cnty.*, 2017 WL 6598557, at *17; *see also Blount Cnty.*, 2017 WL 6606855, at *21; *Sullivan Cnty.*, 2017 WL 6598559, at *17; *Washington Cnty.*, 2017 WL 6603656, at *17. The appellate court first determined that the distribution statute was ambiguous regarding whether cities that operate their own school systems were required to remit a portion of their LBD tax proceeds to their

---

[8] The decisions were all issued by the same panel, and the legal analysis is substantively identical in each opinion.

- 6 -

counties when the counties had not approved LBD sales by referendum. *See Bradley Cnty.*, 2017 WL 6598557, at \*8; *see also Blount Cnty.*, 2017 WL 6606855, at \*9; *Sullivan Cnty.*, 2017 WL 6598559, at \*8; *Washington Cnty.*, 2017 WL 6603656, at \*10. After considering the statutory framework, legislative history, and other sources, the Eastern Section panel held that the distribution statute directed the cities to expend and distribute half of their LBD tax proceeds in the manner in which the county property taxes would be expended and distributed *within the cities*, that is, for the benefit of the cities' own school systems.[9] *See Bradley Cnty.*, 2017 WL 6598557, at \*17; *see also Blount Cnty.*, 2017 WL 6606855, at \*21; *Sullivan Cnty.*, 2017 WL 6598559, at \*17; *Washington Cnty.*, 2017 WL 6603656, at \*17.

About a month later, on January 23, 2018, the Court of Appeals for the Middle Section reached the opposite conclusion in a factually similar case. *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, No. M2017-00935-COA-R3-CV, 2018 WL 522423, at \*4 (Tenn. Ct. App. Jan. 23, 2018). In *Coffee County*, the Middle Section panel acknowledged the four decisions issued by the Eastern Section panel but disagreed with the analysis in those decisions. *Id.* at \*3-4 (noting that it did "not disagree with [its] learned cohorts lightly"). Rather, the Middle Section panel deemed the distribution statute unambiguous and held that, on its face, the statute plainly required municipalities to distribute the tax proceeds in the same manner that the counties distribute county property taxes for schools. The Middle Section declined to consider anything outside the text of the specific provision. *Id.* at \*3.

We granted permission to appeal in this case and in the four similar cases arising out of both the Eastern and Middle Sections of the Court of Appeals to resolve the split among the appellate courts on the proper interpretation of the distribution statute.[10]

---

[9] Although the Court of Appeals affirmed the trial court's decision in the instant case, it specifically rejected the trial court's stated basis for its conclusion. *Bradley Cnty.*, 2017 WL 6598557, at \*8 (noting that Section 57-4-103(a)(1) "did not necessarily exempt the City from the general requirement of [the distribution statute] of distributing one-half of its liquor-by-the-drink revenue in the manner of county property tax distribution").

[10] This case was consolidated with the other four cases for oral argument only. This opinion resolves only the dispute between Bradley County and the City of Cleveland. Separate opinions are being issued in each of the other four cases.

STANDARD OF REVIEW

We review a trial court's ruling on a motion for summary judgment de novo without a presumption of correctness in the lower court's decision. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *Rye*, 477 S.W.3d at 250.

As we have indicated, the relevant facts in the instant appeal are undisputed, and the issues involve only the interpretation of statutes. Issues of statutory interpretation are questions of law, which are also reviewed de novo without a presumption of correctness. *Beard v. Branson*, 528 S.W.3d 487, 494-95 (Tenn. 2017) (quoting *Kiser v. Wolfe*, 353 S.W.3d 741, 745 (Tenn. 2011)); *Circle C Constr., LLC v. Nilsen*, 484 S.W.3d 914, 917 (Tenn. 2016).

## ANALYSIS

The issue on appeal involves the proper interpretation of the distribution statute as it existed when this lawsuit was filed in April 2014.[11] At that time, the statute read:

> (a) All gross receipt taxes collected under § 57-4-301(c) shall be distributed by the commissioner as follows:
>
> > (1) Fifty percent (50%) to the general fund to be earmarked for education purposes; and
> >
> > *(2) Fifty percent (50%) to the local political subdivision as follows:*

---

[11] As noted above in footnote 4, the distribution statute was amended substantially in July 2014, after this lawsuit was filed. *See* 2014 Tenn. Pub. Acts, ch. 901 § 1 (H.B. 1403). As explained in *Coffee County*, however, we need not delve into the particulars of the amendment because it does not apply in this case and it does not inform our interpretation of the pre-July 2014 versions of the statute. *See Coffee Cnty.* slip op. at 22.

*(A)  One half (1/2) of the proceeds shall be expended and distributed in the same manner as the county property tax for schools is expended and distributed*; provided, however, that except in [Bedford County][12] any proceeds expended and distributed to municipalities which do not operate their own school systems separate from the county are required to remit one half (½) of their proceeds of the gross receipts liquor-by-the-drink tax to the county school fund; and

(B)  The other one half (1/2) shall be distributed as follows:

(i)  Collections of gross receipts collected in unincorporated areas, to the county general fund; and

(ii)  Collections of gross receipts in incorporated cities and towns, to the city or town wherein such tax is collected.

Tenn. Code Ann. § 57-4-306(a)(1)–(2) (2013) (emphasis added).  The italicized portion of the statute, which we call "the local education provision," is the specific provision in dispute in this case.  The question is whether municipalities with their own school systems were required to expend and distribute their LBD tax proceeds with other schools in the county pro rata, that is, "in the same manner as the county property tax for schools is expended and distributed" by the county.  *Id.* § 57-4-306(a)(2)(A) (2013).

We examined the proper interpretation of the distribution statute at length in *Coffee County*, the case arising out of the Middle Section Court of Appeals and released on the same date as this opinion.  *See Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, No. M2017-00935-SC-R11-CV, slip op. at 22 (Tenn. May 8, 2019) (hereinafter "*Coffee Cnty.*").  After fulsome analysis, we concluded in *Coffee County* that the local education provision in the distribution statute "required a municipality with its own school system to expend and distribute half of its LBD tax proceeds in the same manner that the county property tax for schools is expended and distributed within the municipality, which is for the benefit of the municipality's own school system."  *Id.* at 22.  In that case, because the

---

[12] It is undisputed that the statutory language omitted and replaced by the bracketed language describes the population parameters of Bedford County.

- 9 -

City of Tullahoma had its own school system, we held that the city "was not required to share its LBD tax proceeds with the [c]ounty" during the relevant time period. *Id.* at 22.

The issue in the instant case is substantively indistinguishable from the issue decided in *Coffee County*. We did not specifically address the City's argument based on Section 57-4-103(a) in *Coffee County*, because doing so was unnecessary based on our interpretation of the distribution statute. The same is true for the instant case. Therefore, based on our holding in *Coffee County*, we hold that the distribution statute did not require the City to share half of its LBD tax proceeds with the County and other school systems in the County pro rata. Rather, the local education provision directed the City to expend and distribute the education portion of its LBD tax proceeds in support of its own municipal school system. Our conclusion applies to all LBD tax proceeds paid to the City—those generated from pre-2002 referendum LBD tax proceeds from private club sales as well as those generated post-referendum. For this reason, we affirm the trial court's grant of summary judgment in favor of the City, albeit on a different basis.

## CONCLUSION

The decisions of the trial court and the Court of Appeals are affirmed. Costs on appeal are to be taxed to Appellants Bradley County School System, by and through the Bradley County Board of Education, and Bradley County, as well as their surety, for which execution may issue, if necessary.

_____
HOLLY KIRBY, JUSTICE

- 10 -